D.D., a minor, by and through his Parent and Next Friend, V.D.; A.C., a minor, by and through his Parent and Next Friend, V.S.; B.T., a minor, by and through his Parent and Next Friend, D.N., individually and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

NEW YORK CITY BOARD OF EDUCATION; New York City Department of Education; Joel Klein; Angelo Gimondo, Dr., Superintendent, Community School District 30; Nelly Real–Korb, Chairperson, Committee on Preschool Special Education District 30; Richard P. Mills, Commissioner of the New York State Education Department; City of New York; Joe Blaize, Chairperson, CPSE District 29; Michael A. Johnson, Superintendent, Community School District 29; Beth Marino, Chairperson, CPSE District 25 and Michelle Fratti, Superintendent, Community School District 25, Defendants–Appellees.

Docket No. 04–2542–CV.

United States Court of Appeals, Second Circuit.

Argued: Sept. 8, 2004.

Decided: Oct. 12, 2006.

Ilann M. Maazel (Matthew D. Brincker-hoff and Eric Hecker, on the brief) Emery Celli Brinckerhoff & Abady LLP, New York, NY, appearing for Plaintiffs–Appel-lants.

Grace Goodman (Michael A. Cardozo and Larry A. Sonnenshein, on the brief) Corporation Counsel of the City of New York, New York, NY, appearing for the City Defendants–Appellees.

Melanie L. Oxhorn, Assistant Solicitor General (Michael S. Belohlavek, Deputy Solicitor General, on the brief) for Eliot Spitzer, Attorney General of the State of New York, New York, NY, appearing for the State Defendant–Appellee.

Before NEWMAN, CALABRESI and HALL, Circuit Judges.

HALL, Circuit Judge.

Three New York City preschool children with disabilities ("named plaintiffs" and to-gether with plaintiff class, "Plaintiffs") filed a class action alleging, inter alia, that the New York City Department of Edu-

cation ("DOE")[1] and the New York State Education Department ("SED" and together with DOE, "Defendants") violated their rights under the Individuals with Disabilities Education Act ("IDEA" or "the Act"), 20 U.S.C.A. §§ 1400–1482 (West 2000 & Supp.2005). In particular, Plaintiffs alleged that Defendants failed to provide them immediately with the educational services mandated by their Individualized Education Programs ("IEPs") under the IDEA. Plaintiffs moved for a preliminary injunction ordering Defendants to implement all services required by the IEPs immediately. The United States District Court for the Eastern District of New York (Trager, *J.*) denied the motion. The District Court based its denial of the preliminary injunction in principal part on its determination that former § 1416(a), which required participating states to "comply substantially" with the provisions of the IDEA, 20 U.S.C.A. § 1416(a) (West 2000), *amended by* 20 U.S.C.A. § 1416 (West Supp.2005),[2] "raise[d] some question as to whether defendants can be held to an absolute standard of timely providing services to 100% of preschool children with IEPs."

On appeal, Plaintiffs argue that in evaluating whether they were entitled to a preliminary injunction, the District Court incorrectly used a "substantial compliance" standard to assess the Defendants' obligation to meet Plaintiffs' rights. They contend the IDEA confers upon them and all disabled children the right to a "free appropriate public education," and the Act's requirement to "comply substantially" with its provisions applies only to the States' entitlement to continue receiving federal funds.

We agree that the IDEA provides Plaintiffs the right to a free appropriate public education. We also agree that the District Court erred in using the "substantial compliance" standard to determine whether Plaintiffs could prove that right was being denied. We disagree, however, with Plaintiffs' assertion that their right to a free appropriate public education entitles them to receive the required educational services immediately upon development of their IEPs or within a specific time thereafter. Instead, we hold that the right to a free appropriate public education entitles Plaintiffs to their IEP-mandated services "as soon as possible" after the IEPs have been developed. Because the District Court applied the wrong legal standard, we vacate that portion of the District Court's order denying Plaintiffs' motion for a preliminary injunction and remand it for reconsideration under the proper legal standard.

## BACKGROUND

### I. *Factual History*

The named plaintiffs are three disabled New York City preschool students whose IEPs have been determined. After named plaintiffs received their IEPs, the DOE placed them on a list referred to as the "PN" list.[3] The PN list is a waiting list for

---

**1.** The New York City Board of Education has been renamed the "New York City Department of Education." *See A.R. ex rel. R.V. v. New York City Dep't. of Educ.*, 407 F.3d 65, 67 n. 2 (2d Cir.2005).

**2.** While this case was pending on appeal, Congress generally amended the IDEA by enacting the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"),

Pub.L. No. 108–446, 118 Stat. 2647 (Dec. 3, 2004), which took effect on July 1, 2005. Except where noted, the statutory citations herein refer to the IDEA as recodified by the IDEIA.

**3.** Plaintiffs refer to the list as the "PNA list" and claim the abbreviation stands for "Placement Not Available." For their part, Defendants call the list the "Parent Notification" or

students who have received IEPs, but for whom educational services cannot be found immediately. A brief description of named plaintiffs' circumstances is warranted.

D.D. was born on July 27, 1998, and was a New York City resident until July of 2003. D.D. received an IEP in November of 2002 and an amended IEP on March 31, 2003, but he received none of the services required by either IEP through May of 2003.[4] A.C. is a New York City resident born on December 21, 1999. He received an IEP on February 26, 2003, with a projected start date of March 10, 2003. Although A.C. eventually received speech therapy on an interim basis, he did not receive the occupational therapy, counseling, or school placements required by his IEP for at least three months.[5] B.T. was born on October 7, 1999, and is also a New York City resident. He received his IEP on January 3, 2003. Although the projected start date for B.T.'s IEP was "ASAP" meaning "as soon as possible," he received none of his required services through March of 2003 and only partial services

through June of 2003. B.T. was not offered a placement at a school until June 25, 2003.

## II. *The Statutory and Regulatory Framework*

■ The IDEA offers federal funds to states that demonstrate they have "in effect policies and procedures to ensure that … [a] free appropriate public education is available to all children with disabilities." 20 U.S.C. § 1412(a)(1)(A). To meet the IDEA's requirements, states "must provide each student with a disability 'special education and related services' designed to serve the student's needs." *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379 (2d Cir.2003) (quoting former 20 U.S.C. § 1401(8) the substance of which is currently codified as 20 U.S.C. § 1401(9)). "The centerpiece of the IDEA's educational delivery system is the … IEP," *Murphy v. Arlington Cent. Sch. Dist. Bd. of Ed.*, 297 F.3d 195, 197 (2d Cir.2002) (internal quotation marks omitted), a written

"Awaiting Placement Notification" list. We refer to the list as the "PN list" without making any determination as to the correct term.

4. After retaining counsel, D.D. had a hearing before a DOE impartial hearing officer on April 11, 2003. In a decision dated April 30, 2003, the hearing officer concluded that D.D. required the services listed in the March 31, 2003, IEP and ordered the DOE to implement the IEP by May 10, 2003, and provide D.D. with compensatory services over the summer. DOE failed to do so. On May 16, 2003, D.D. filed in the United States District Court for the Eastern District of New York an order to show cause for a temporary restraining order and preliminary injunction to comply with and implement the April 30 decision of the impartial hearing officer. Judge Trager granted the temporary restraining order on May 21, 2003. Because D.D.'s parents removed him from preschool and took him out of the country in July 2003, Judge Trager modified the May 21 order to permit DOE to discontinue paying for certain services.

5. Like D.D., A.C. retained counsel. On June 4, 2003, A.C. had an impartial hearing before a DOE impartial hearing officer. According to Linda Wernikoff, Deputy Superintendent for Special Education Initiatives of the DOE, on or about June 4, 2003, DOE informed A.C.'s parents about openings at three programs, but his parents declined the program at one of the schools. At around the same time, A.C. relocated to a different school district. A.C.'s parents were advised that another program in that district was available, but apparently they failed to keep two appointments to view the program. A.C.'s parents subsequently accepted a full day special class program that began July 1, 2003. On July 25, 2003, the impartial hearing officer ordered the DOE to provide compensatory services to A.C. According to Wernikoff, A.C.'s parents made it difficult to move forward with the compensatory services because they initially insisted that A.C. receive a type of therapy not listed on his IEP.

statement that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig v. Doe,* 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *see also* 20 U.S.C. § 1414(d)(1)(A) (defining "IEP").

The IDEA does not specify a time frame for implementing an IEP after it has been developed. Federal regulations require that once an IEP is adopted for a disabled child, "[e]ach public agency shall ensure that (1)[a]n IEP ... [i]s implemented as soon as possible following the [IEP] meeting[ ]." 34 C.F.R. § 300.342(b)(1)(ii) (2005).[6] According to New York's implementing regulations, "[t]here may be no delay in implementing a student's IEP." 8

N.Y.C.R.R. § 200.4(e)(1)(i). The board of education must:

> arrange for the preschool student with a disability to receive such programs and services commencing with the July, September or January starting date for the approved program, unless such services are recommended by the committee less than 30 school days prior to, or after, such appropriate starting date selected for such preschool student, in which case, such services shall be provided no later than 30 school days from the recommendation of the committee [on preschool special education].

8 N.Y.C.R.R. § 200.16(f)(1).

New York uses a private provider system to provide disabled preschool children with the programs and services required by their IEPs. As of the fall of 2003, 96 providers approved by the SED operated 420 private preschool special education

---

**6.** The commentary to § 342(b)(1)(ii) provides:

> [I]t is expected that the IEP of a child with a disability will be implemented immediately following the meetings under § 300.343. An exception to this would be (1) when the meetings occur during the summer or a vacation period, or (2) where there are circumstances that require a short delay (e.g., working out transportation arrangements). However, there can be no undue delay in providing special education and related services to the child.

57 Fed.Reg. 44794, 44814 (Sept. 29, 1992). Subsequent commentary states:

> It would not be appropriate to add an outside timeline under § 300.342(b) for implementing IEPs, especially when there is not a specific statutory basis to do so. However, with very limited exceptions, IEPs for most children with disabilities should be implemented without undue delay following the IEP meetings described in § 300.342(b)(2).
>
> There may be exceptions in certain situations. It may be appropriate to have a short delay (e.g., (1) when the IEP meetings occur at the end of the school year or during the summer, and the IEP team determines that the child does not need spe-

cial education and related services until the next school year begins); or (2) when there are circumstances that require a short delay in the provision of services (e.g., finding a qualified service provider, or making transportation arrangements for the child).

> If it is determined, through the monitoring efforts of the Department, that there is a pattern o[r] practice within a given State of not making services available within a reasonable period of time (e.g., within a week or two following the meetings described in § 300.343(b)), this could raise a question as to whether the State is in compliance with that provision, unless one of the exceptions noted above applies.

64 Fed.Reg. 12406, 12579 (Mar. 12, 1999). These regulations were amended on August 14, 2006 to implement the 2004 amendments to the IDEA. *See* 71 Fed.Reg. 46540, 46753 (Aug. 14, 2006). The amended regulations will take effect on October 13, 2006. Section 300.342(b)(1)(ii) will be recodified at § 300.323(c)(2), which requires that "[e]ach public agency must ensure that ... [a]s soon as possible following the development of the IEP, special education and related services are made available to the child in accordance with the child's IEP." 71 Fed.Reg. at 46789.

programs in New York City. For services, the DOE maintains a list of more than 900 independent related service providers with whom it contracts to provide related services to disabled preschool students.

In New York City, there are students for whom services cannot be found immediately. These students are placed on the PN list. In order to supply the educational services needed by students on the PN list, the DOE disseminates a monthly report to all approved preschool providers asking whether they can provide the identified services to the children on the PN list, provide partial services, or request a child-specific allowance to exceed temporarily an approved class size in order to provide the needed services.

■ The Secretary of Education "is primarily responsible for the interpretation and implementation of the IDEA and has been granted regulatory and enforcement powers." *See County of Westchester v. New York*, 286 F.3d 150, 153 (2d Cir.2002). To that end, the IDEA includes a substantial compliance provision, authorizing the Secretary to, inter alia, withhold further payments to a state under the Act, if she determines there was a "substantial failure to comply" with the Act. 20 U.S.C.A. § 1416(e)(3) (West Supp.2005).[7]

III. *Procedural History*

On June 16, 2003, the named plaintiffs filed an Amended Class Action Complaint on behalf of "all present and future New York City preschool children with IEPs who have not or will not receive all of the services recommended in their IEPs." Amend. Compl. ¶ 23. The named plaintiffs alleged that by failing to provide immediately all services recommended in the IEPs, the Defendants "have deprived and will continue to deprive [them] of rights . . . in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the IDEA, 20 U.S.C. § 1400 *et seq.*" *Id.* ¶ 140. On June 19, the named plaintiffs moved to certify the class pursuant to Fed.R.Civ.P. 23, and sought a preliminary injunction requiring Defendants "to immediately implement all services required by [IEPs] to all members of the plaintiff class."

On March 30, 2004, the District Court issued a Memorandum and Order granting class certification,[8] but denying the preliminary injunction. *D.D. v. New York City Bd. of Educ.*, 2004 WL 633222 (E.D.N.Y. Mar.30, 2004). The District Court found that Plaintiffs satisfied the first prong of the preliminary injunction test by demonstrating that continued delays in the delivery of the educational services would result in irreparable harm. The District Court held, however, that Plaintiffs failed to demonstrate a clear or substantial likelihood of success on the merits, and thus failed to satisfy the second prong of the preliminary injunction test. Relying on the Act's substantial compliance provision, the District Court assumed that to prevail on their claim Plaintiffs must demonstrate

**7.** At the time the District Court denied plaintiffs' motion, § 1416(a)(1) contained the substantial compliance provision. 20 U.S.C. § 1416(a) (2000). As a result of the 2004 Amendments to the IDEA, *see supra* note 2, the substantial compliance provision was modified slightly and moved to § 1416(e). 20 U.S.C.A. § 1416(e) (West Supp.2005).

**8.** The District Court modified the Plaintiffs' proposed class definition in order to address Defendants' concern that it was overly broad because it could be read to include children whose IEPs were only recently adopted and therefore had not yet received services. Thus, as certified, the class consists of "[a]ll present and future New York City preschool children with IEPs who have not or will not *timely* receive all of the services required by their IEPs."

that Defendants are not in "substantial compliance" with the provisions of the IDEA. Because the record revealed that Defendants timely provide services to at least 97% of children with IEPs, the District Court concluded it was not clear that Plaintiffs could demonstrate that Defendants were not in "substantial compliance" with the IDEA, and therefore denied the preliminary injunction.

## DISCUSSION

### I. *Standard of Review*

When reviewing a district court's denial of a preliminary injunction, we review the district court's legal holdings de novo and its ultimate decision for abuse of discretion. *See McCreary County v. ACLU*, 545 U.S. 844, 125 S.Ct. 2722, 2737, 162 L.Ed.2d 729 (2005); *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir.2004). We may affirm on any ground supported by the record. *NXIVM Corp.*, 364 F.3d at 476. In general, to secure a preliminary injunction, the moving party must demonstrate: (1) irreparable harm, "and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." *MONY Group, Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138, 143 (2d Cir. 2004) (internal quotation marks omitted). A party moving for a mandatory injunction that alters the status quo by commanding a positive act must meet a higher standard, however. *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33–34 (2d Cir.1995). That is, in addition to demonstrating irreparable harm, "[t]he moving party must make a clear or substantial showing of a likelihood of success" on the merits, *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir.1996) (internal quotation marks omitted), a standard especially appropriate

when a preliminary injunction is sought against government. *Mastrovincenzo v. City of New York*, 435 F.3d 78, 89 (2d Cir.2006). The District Court held, and Plaintiffs concede, that Plaintiffs must meet this higher standard.

### II. *Irreparable Harm*

The irreparable harm inquiry need not detain us long. Noting a line of authority holding that deprivation of mandated educational services constitutes irreparable harm, the District Court held that Plaintiffs satisfied the first prong of the preliminary injunction test. We see no reason to disturb that finding, particularly where, as here, Defendants have not challenged it on appeal. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir.1995) (holding issues not raised in appellate brief are abandoned).

### III. *Likelihood of Success on the Merits*

#### A. *Substantial Compliance*

The IDEA contains a substantial compliance provision authorizing the Secretary of Education to, inter alia, withhold further payments pursuant to the Act if she determines the state has failed to comply substantially with the provisions of the Act. 20 U.S.C.A. § 1416(e)(3) (West Supp.2005); *see also County of Westchester*, 286 F.3d at 153 (noting the Secretary of Education was granted the power to enforce the IDEA and citing former § 1416). Relying on that provision, the District Court ruled Plaintiffs could not succeed on the merits of their claim without demonstrating that Defendants did not substantially comply with the provisions of the IDEA. This was error.

It is by now well-settled that the IDEA confers upon disabled students the right to a free appropriate public education. *See Honig*, 484 U.S. at 310, 108 S.Ct. 592

("Congress did not content itself with passage of a simple funding statute.... [T]he [Act] confers upon disabled students an enforceable substantive right to public education in participating States ... and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act."); *Smith v. Robinson,* 468 U.S. 992, 1010, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) ("Congress made clear that the [Act] is not simply a funding statute. The responsibility for providing the required education remains on the States.... [T]he Act establishes an enforceable substantive right to a free appropriate public education.").[9]

It is also clear that the right to a free appropriate public education is afforded to each disabled child as an individual. *See, e.g.,* 20 U.S.C. § 1419(b) (providing that a state must "make[ ] a free appropriate public education available to *all* children with disabilities, aged 3 through 5, residing" within the state in order to be eligible for preschool grants under the Act (emphasis added)); *id.* § 1412(a)(4) (requiring states to "develop[ ], review[ ], and revise[ ] [an IEP] for *each* child with a disability" (emphasis added)); *Cedar Rapids Cmty. Sch. Dist. v. Garret F.,* 526 U.S. 66, 68, 119 S.Ct. 992, 143 L.Ed.2d 154 (1999) (noting the purpose of the Act was to " 'assure that *all* children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their *unique* needs' " (quoting former 20 U.S.C. § 1400(c), now codified as 20 U.S.C. § 1400(d)(1)(A)) (emphasis added)); *Marie O. v. Edgar,* 131 F.3d 610, 620 (7th Cir.1997) ("It is clear

that Congress intended to require the states to undertake specific and concrete obligations to eligible *individuals* in exchange for the federal funds granted under [the IDEA]." (emphasis added)).

■ The Supreme Court's discussion of a provision similar to § 1416(e) in *Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), makes clear that the substantial compliance standard cannot be applied to Plaintiffs' claims to enforce the individual rights conferred by the Act. That provision, 42 U.S.C. § 609(a)(8), required participating states to "substantially comply" with Title IV–D of the Social Security Act. *Blessing,* 520 U.S. at 335, 117 S.Ct. 1353. A group of mothers whose children were eligible to receive services under Title IV–D sued the director of Arizona's child support agency pursuant to § 1983, claiming they had an enforceable individual right to have the State's program "substantially comply" with the provisions of Title IV–D. *Id.* at 332–35, 117 S.Ct. 1353. The Court held that "[f]ar from creating an *individual* entitlement to services, the [substantial compliance] standard is simply a yardstick for the Secretary to measure the *systemwide* performance of a State's Title IV–D program. Thus, the Secretary must look to the aggregate services provided by the State, not to whether the needs of any particular person have been satisfied." *Id.* at 343, 117 S.Ct. 1353. Because "the requirement that a State operate its child support program in 'substantial compliance' with Title IV–D was not intended to benefit individual children and custodial parents" the provision did not create a federal right and, therefore, was not enforceable via § 1983. *Id.*[10]

---

**9.** Both *Honig,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686, and *Smith,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746, refer to the "Education of the Handicapped Act" or "EHA," the title of the Act before it was amended by

Congressional enactment of the IDEA in 1991.

**10.** The parties do not dispute that, unlike Title IV–D of the Social Security Act at issue in

■ The Supreme Court's analysis of § 609(a)(8) applies to § 1416(e). The "complies substantially" standard set forth in § 1416(e) is the yardstick by which the Secretary of Education determines whether a state will receive federal funding under the Act. In contrast, access to a "free appropriate public education" is a right that the IDEA guarantees to individual disabled children. Unlike the plaintiffs in *Blessing,* moreover, Plaintiffs in this case have not sued to enjoin Defendants to substantially comply with the provisions of the IDEA. Rather, they seek a free appropriate public education, a service participating states are obliged to provide according to the IDEA's clear statutory language. *See Marie O.,* 131 F.3d at 620. With respect to that obligation, the IDEA does not simply require substantial compliance on the part of participating states; it requires compliance. *See id.* at 620–21.

■ Moreover, Plaintiffs' right to a free appropriate education is unaffected by the fact that they have chosen to assert their claim in a class action pursuant to Fed. R.Civ.P. 23. The Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Had a single eligible student brought an action claiming that a systemic failure had deprived him of his right to a free appropriate public education, Defendants could not defeat his claim by establishing that they provide such access to a substantial number of eligible students. Substantial compliance can therefore serve as no defense here. Because substantial compliance is not the appropriate yardstick by which to measure the extent of Defendants' obligation to Plaintiffs under the IDEA, it is not the appropriate standard by which to evaluate Plaintiffs' likelihood of success on the merits of their claim.

### B.  *As Soon As Possible*

■ To conclude the District Court employed the wrong standard does not settle whether Plaintiffs have established a clear or substantial likelihood of success on the merits of their claim and are thus entitled to a preliminary injunction. Plaintiffs appear to claim that their right to a free appropriate public education entitles them to have their IEPs implemented immediately, or at least within 30 days, after their IEPs are developed. Amend. Compl. at ¶ 140.[11] We disagree.

The term "free appropriate public education" is defined in part as "special education and related services that ... are provided in conformity with the individualized education program required under section 1414(d) of this title." 20 U.S.C. § 1401(8)(D). Section 1414(d) does not provide a time frame for implementing an IEP after its development, but federal reg-

---

*Blessing,* the IDEA creates rights in favor of disabled children and their families enforceable through § 1983. *See Taylor v. Vt. Dep't. of Educ.,* 313 F.3d 768, 786 n. 14 (2d Cir. 2002); *Mrs. W. v. Tirozzi,* 832 F.2d 748, 755 (2d Cir.1987); *see also Marie O.,* 131 F.3d at 622; *W.B. v. Matula,* 67 F.3d 484, 493–94 (3d Cir.1995); *Digre v. Roseville Sch. Indep. Dist. No. 623,* 841 F.2d 245, 249–50 (8th Cir.1988). *But see Padilla v. Sch. Dist. No. 1,* 233 F.3d 1268, 1274 (10th Cir.2000); *Sellers v. Sch. Bd.,* 141 F.3d 524, 529–32 (4th Cir.1998).

11.  Plaintiffs' argument about the correct time frame for the implementation of IEPs is contradictory.  In their opening brief, Plaintiffs state that the "district court properly held that federal law requires 'immediate' implementation of IEPs." In their reply brief, Plaintiffs state that the "district court held correctly that IEPs must be implemented 'as soon as possible' after the IEP meetings." Apparently based upon their reading of New York State regulations, Plaintiffs also assert a "30–day standard" for implementing IEPs. Amend. Compl. at 34.

ulations require that an IEP be implemented "as soon as possible" after the requisite IEP meetings. 34 C.F.R. § 300.342(b)(1)(ii). This Court has yet to determine whether a federal regulation, standing alone, can create a right enforceable via § 1983. *See Rodriguez v. City of New York,* 197 F.3d 611, 617 (2d Cir.1999) (assuming arguendo that Medicaid regulations can create a right enforceable under § 1983); *King v. Town of Hempstead,* 161 F.3d 112, 115 (2d Cir.1998) (per curiam) (noting the issue, but declining to resolve it); *see also Wright v. Roanoke Redev. & Hous. Auth.,* 479 U.S. 418, 437, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (O'Connor, *J.,* dissenting) (describing as "troubling" the question of whether regulations alone can create a federal right enforceable under § 1983). Although the circuits are divided on the question, the majority have determined that where a regulation's enforcing statute confers no federal right, the regulation alone cannot create a right enforceable under § 1983. *Compare Johnson v. City of Detroit,* 446 F.3d · 614, 629 (6th Cir.2006) (holding a federal regulation alone cannot create a right enforceable through § 1983);[12] *Save Our Valley v. Sound Transit,* 335 F.3d 932, 939 (9th Cir.2003) (holding "regulations cannot independently create rights enforceable through § 1983"); *S. Camden Citizens in Action v. New Jersey Dep't of Envtl. Prot.,* 274 F.3d 771, 790 (3d Cir.2001) (same); *Harris v. James,* 127 F.3d 993, 1008 (11th Cir.1997) (same); *Smith v. Kirk,* 821 F.2d 980, 984 (4th Cir.1987) (same); *with Samuels v. District of Columbia,* 770 F.2d 184, 199 (D.C.Cir.1985) (holding a federal regu-

lation can create a federal right enforceable via § 1983).

We need not address the question here because § 300.342(b)(1)(ii), standing alone, does not create a federal right. Instead, it is the IDEA that creates the right to a free appropriate public education enforceable through § 1983. Section 300.342(b)(1)(ii) merely defines the scope of that right with respect to the requisite time frame for implementing an IEP. *See Wright,* 479 U.S. at 430–32, 107 S.Ct. 766 (low-income housing tenants could maintain a suit under § 1983 for alleged violations of the rent ceiling provision of the Housing Act of 1937 together with its implementing regulations); *see also S. Camden Citizens,* 274 F.3d at 783 ("[T]he *Wright* Court located the alleged right in the statutory provision and then relied upon the implementing regulations to define and interpret that right."); *Harris,* 127 F.3d at 1009 (reading *Wright* to indicate "that so long as the statute itself confers a specific right upon the plaintiff, and a valid regulation merely further defines or fleshes out the content of that right, then the statute—in conjunction with the regulation—may create a federal right as further defined by the regulation" (internal quotation marks omitted)).

Section 300.342(b)(1)(ii), however, requires only that IEPs be implemented "as soon as possible," not "immediately," or within 30 days, as Plaintiffs assert. In 1997, Congress amended various parts of the IDEA. Pub.L. No. 105–17, 111 Stat. 37. The Secretary of Education subsequently published a notice of proposed rulemaking in the Federal Register to amend certain portions of the regulations governing the

---

**12.** In *Loschiavo v. City of Dearborn,* 33 F.3d 548, 553 (6th Cir.1994), the Sixth Circuit held that federal regulations can create federal rights enforceable via § 1983. In *Johnson,* however, the Court reiterated its conclusion in *Caswell v. City of Detroit Hous. Comm'n,* 418 F.3d 615, 618 (6th Cir.2005), that its holding in *Loschiavo* has been "cabined" by Supreme Court jurisprudence and "the rule ... that a federal regulation alone may create a right enforceable through § 1983, is no longer viable." *Johnson,* 446 F.3d at 629.

IDEA. 62 Fed.Reg. 55026 (Oct. 22, 1997). The notice invited comments on the proposed regulatory changes. *Id.* With respect to § 300.342, several commentators stated that the terms "as soon as possible" (in the regulation itself) and "undue delay" (in the accompanying commentary) were "not meaningful" and requested that the Secretary define or clarify those terms. 64 Fed.Reg. 12406, 12579 (Mar. 12, 1999). Commentators also recommended that the Secretary impose an "outside timeline," such as 15 days, for the implementation of IEPs following the meetings. *Id.* The Secretary declined these suggestions, stating it "would not be appropriate to add an outside timeline under § 300.342(b) for implementing IEPs, especially when there is not a specific statutory basis to do so." *Id.* Nevertheless, the Secretary commented that "with very limited exceptions" IEPs "should be implemented without undue delay following the IEP meetings." *Id.* The Secretary listed the following examples of "situations" that may warrant "a short delay":

> (1) when the IEP meetings occur at the end of the school year or during the summer, and the IEP team determines that the child does not need special education and related services until the next school year begins[ ] or (2) when there are circumstances that require a short delay in the provision of services (e.g., finding a qualified service provider, or making transportation arrangements for the child).

*Id.* The Secretary cautioned that:

> If it is determined, through the monitoring efforts of the Department, that there is a pattern o[r] practice within a given State of not making services available within a reasonable period of time (e.g., within a week or two following the meetings described in § 300.343(b)), this could raise a question as to whether the State is in compliance with that provision, unless one of the exceptions noted above applies.

*Id.*

Based on this commentary, we conclude that § 300.342(b)(1)(ii) means what it says: States must implement a student's IEP "as soon as possible" after it has been developed. In other words, Plaintiffs' right to a free appropriate public education requires that their IEPs be implemented as soon as possible. "As soon as possible" is, by design, a flexible requirement. It permits some delay between when the IEP is developed and when the IEP is implemented. It does not impose a rigid, outside time frame for implementation. Moreover, the requirement necessitates a specific inquiry into the causes of the delay. Factors to be considered include, but are not limited to: (1) the length of the delay, (2) the reasons for the delay, including the availability of the mandated educational services, and (3) the steps taken to overcome whatever obstacles have delayed prompt implementation of the IEP. Nonetheless, just because the as-soon-as-possible-requirement is flexible does not mean it lacks a breaking point. "It is no doubt true that administrative delays, in certain circumstances, can violate the IDEA by depriving a student of his right to a 'free appropriate public education.'" *Grim,* 346 F.3d at 381.[13]

---

**13.** Plaintiffs also contend that Defendants are in violation of New York State's regulations, 8 N.Y.C.R.R. §§ 200.4(e)(1)(i) and 200.16(e)(1), which Plaintiffs claim require the implementation of IEP-mandated services within 30 days. Defendants dispute this interpretation of the regulations. Even if, arguendo, State regulations impose a 30–day time frame, and Defendants have violated that time frame, such a violation would only violate federal law if Defendants failed to implement Plaintiffs' IEPs "as soon as possible" as required

Because the District Court applied the wrong standard in evaluating Plaintiffs' motion for preliminary injunction, we vacate its denial of that motion and remand for reconsideration utilizing the proper standard. *See, e.g., Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins., Co.,* 302 F.3d 18, 34 (2d Cir.2002); *Horgan v. Macmillan, Inc.,* 789 F.2d 157, 158, 164 (2d Cir.1986). It will obviously be helpful if the District Court can now combine the preliminary injunction with the merits and adjudicate the entire controversy. *See* Fed.R.Civ.P. 65(a)(2).

## CONCLUSION

For the reasons set forth above, we vacate the District Court's order denying Plaintiffs' motion for a preliminary injunction and remand the case for further proceedings consistent with this opinion.

by § 300.342(b)(1)(ii). In addition, the amended complaint does not invoke supplemental jurisdiction under 28 U.S.C. § 1637(a), and there is no state law cause of action pleaded in the amended complaint. Moreover, this would be an inappropriate case for supplemental jurisdiction. The State and City regulatory schemes are intricate and difficult to interpret. Any claim for relief based solely on State or City law is best left to the State courts.