David **SMITH** and Pamela Smith, Individually and as Parents and next friends of Jeremy Smith, Plaintiffs–Appellants,

v.

**GUILFORD BOARD OF EDUCATION,** Sandra M. Whelan, in her official capacity as a member of the Guilford Board of Education, Stephen G. Rieben, in his official capacity as a member of the Guilford Board of Education, William L. Dwyer, in his official capacity as a member of the Guilford Board of Education, Keith B. Bishop, in his official capacity as a member of the Guilford Board of Education, Richard J. Beatty, in his

official capacity as a member of the Guilford Board of Education, William Bloss, in his official capacity as a member of the Guilford Board of Education, Margot K. Burkle, in her official capacity as a member of the Guilford Board of Education, James M. Ralls, in his official capacity a member of the Guilford Board of Education, Kathleen Nolan, in her official capacity as a member of the Guilford Board of Education, Barbara L. Truex, in her official capacity as Guilford Superintendent of Schools, Pamela Gardner, in her official capacity as an employee of the Guilford Board of Education, Bea Schipani, in her official capacity as an employee of the Guilford Board of Education, Tammy Lizotte, in her official capacity as an employee of the Guilford Board of Education, and Lillian Preston, in her official capacity as an employee of the Guilford Board of Education, Defendants–Appellants.*

No. 06–1094–cv.

United States Court of Appeals,
Second Circuit.

June 14, 2007.

---

* This caption varies from the official caption, which is incorrect in certain respects. The Clerk of the Court is directed to amend the official caption accordingly.

Kevin C. Shea, Clendenen & Shea, LLC, New Haven, CT, for Plaintiffs–Appellants.

Gary C. Kaisen, Milano & Wanat LLC, Branford, CT, for Defendants–Appellees.

PRESENT: Hon. GUIDO CALABRESI, Hon. ROBERT D. SACK, and Hon. RICHARD C. WESLEY, Circuit Judges.

## SUMMARY ORDER

Plaintiffs–Appellants David Smith and Pamela Smith ("Plaintiffs") initiated this action, individually and as parents and next friends of their son, Jeremy Smith ("Jeremy"), in the United States District Court for the District of Connecticut (Eginton, *J.*), against the Guilford Board of Education (the "Board"); the Superintendent of Schools for Guilford, Barbara L. Truex ("Truex"); nine members of the Board ("Board members"); and four non-member employees of the Board ("Board employees") (collectively, "Defendants"). Although, in their original complaint, Plaintiffs sued the nine Board members and four Board employees in their individual and official capacities, in the amended complaint, Plaintiffs sued them in their official capacities only.

## BACKGROUND

Plaintiffs' amended complaint included seven counts, of which only counts one, two, five, six and seven are before us on appeal. Count one, brought pursuant to

42 U.S.C. § 1983, alleged that Defendants violated Jeremy's due process and equal protection rights because, between November 2001 and January 2002, (1) Jeremy—who at the time was enrolled as a ninth-grade student at Guilford High School; was 4'7" tall and weighed approximately 75 pounds; and suffered from Attention Deficit Hyperactivity Disorder ("ADHD")—was persistently harassed and bullied by classmates; (2) the Board employees allegedly "knew of some or all of" the mistreatment to which Jeremy was subjected, and yet "condoned, permitted and/or acquiesced in" in such mistreatment; and (3) Truex and the Board members "failed and refused to train and supervise adequately [the Board] employees in appropriate and necessary techniques and procedures for handling and caring for children with disabilities...." Count one also alleges that Defendants violated Jeremy's *statutory* right to a "free appropriate public education," ("FAPE"), to which the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. §§ 1400–1482, entitles him. *See* 20 U.S.C. § 1412(a)(1)(A). Count two, brought pursuant to 42 U.S.C. § 1985(3) and state common law, charged that Defendants conspired to deprive Jeremy of his "due process and equal protection rights." Counts five and six raised state-law negligence claims. Finally, in count seven, Plaintiffs sought, on their own behalf as parents of Jeremy, reimbursement for medical and psychiatric expenses.

On November 23, 2005, the district court issued a ruling granting Defendants' Fed. R.Civ.P. 12(c) motion to dismiss the amended complaint in its entirety, and ordering the case closed. *Smith v. Guilford Bd. of Educ.*, No. 03–01829, 2005 WL 3211449 (D.Conn. Nov. 30, 2005). Less than three months later, on February 7, 2006, the district court granted Plaintiffs' Fed.R.Civ.P. 59(e) motion for reconsideration, but, "[u]pon thorough review, ... ad-

here[d] to its prior decision." Plaintiffs responded by bringing this timely appeal of the district court's November 23, 2005 judgment.

## DISCUSSION

"We review *de novo* a district court's dismissal of a suit pursuant to a motion for judgment on the pleadings." *Desiano v. Warner–Lambert & Co.*, 467 F.3d 85, 89 (2d Cir.2006). " 'In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.' " *Id.* (quoting *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)).

### I. *Count one's due process and equal protection claims, and count two*

We affirm the district court's dismissal of Plaintiffs' due process claim. Although count one of Plaintiffs' complaint does not specify whether it is asserting a procedural or substantive due process claim—and Plaintiffs have remained non-committal in their briefing—we find that a due process claim under either analysis must be dismissed on the pleadings.

"Education, of course, is not among the rights afforded explicit protection under our Federal Constitution." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Thus, "[t]he Fourteenth Amendment does not protect a public education as a substantive fundamental right." *Handberry v. Thompson*, 436 F.3d 52, 70 (2d Cir.2006). And even assuming *arguendo* that the Board employees' inaction can be said to have violated Jeremy's substantive due process rights under the "special relationship" or "state-created danger" ex-

ceptions to *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197–201, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), *see, e.g., Pena v. DePrisco*, 432 F.3d 98, 107–110 (2d Cir.2005); *Dwares v. City of New York*, 985 F.2d 94, 98–99 (2d Cir. 1993), Defendants' failure to respond to the harassing and bullying to which Jeremy was subjected (taking Plaintiffs' assertions to be true), while highly unfortunate, does not rise to the level of "egregious conduct ... so brutal and offensive to human dignity as to shock the conscience." *Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir.2002) (internal quotation marks omitted).

The Due Process Clause does not confer an "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney*, 489 U.S. at 196, 109 S.Ct. 998. But a procedural due process claim can lie where a plaintiff is deprived of a property interest without due process of law. Property interests can be created "by existing rules or understandings that stem from an independent source such as state law...." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). While state law creates the underlying substantive interest the plaintiff seeks to vindicate, "federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. 2701). "In order for a benefit to qualify as a property interest, the person claiming it must have a 'legitimate claim of entitlement' to the benefit, rather than a mere 'unilateral expectation of it.' " *Handberry*, 436 F.3d at 70 (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. 2701). In determining

whether a party has a legitimate claim to a benefit, "we look to the statutes and regulations governing the distribution of benefits." *Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir.2005).

■ Plaintiffs assert that Defendants deprived Jeremy's state-law property interest in a public education by "forc[ing]" him to withdraw from Guilford High School. Am. Compl. ¶ 44. In *Handberry*, we concluded that a combination of a provision of the New York Constitution and New York's education laws established a property interest in education protected by the Fourteenth Amendment. *Handberry*, 436 F.3d at 70–71 (citing N.Y. Const. Art. 8, § 1 and N.Y. Educ. L. § 3202(1)). Here, Article 8, Section 1 of the Connecticut Constitution provides: "There shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation." Conn. Const. Art. 8, § 1. Under Connecticut law, "[t]he public schools shall be open to all children five years of age and over ... and each such child shall have, and shall be so advised by the appropriate school authorities, an equal opportunity to participate in the activities, programs and courses of study offered in such public schools, at such time as the child becomes eligible to participate in such activities, programs and courses of study, without discrimination on account of race, color, sex, religion, national origin or sexual orientation...." Conn. Gen.Stat. § 10–15c(a). Section 10–220(a) of the Connecticut General Statute also directs, *inter alia*, that each board of education "shall cause each child five years of age and over and under eighteen years of age who is not a high school graduate and is living in the school district to attend school in accordance with the provisions of section 10–184." Conn. Gen.Stat. § 10–220(a); Am. Compl. ¶ 31. And section 10–184 provides:

"Subject to the provisions of this section and section 10–15c, each parent or other person having control of a child five years of age and over and under eighteen years of age shall cause such child to attend a public school regularly during the hours and terms the public school in the district in which such child resides is in session...." Conn. Gen.Stat. § 10–184. As in *Handberry,* these provisions of state law confer to Jeremy a "legitimate claim of entitlement" to a property interest in a free appropriate public education.

To state a cognizable procedural due process claim, however, Plaintiffs must also allege that Jeremy was deprived in some manner of a property interest in a FAPE by Defendants' conduct. Jeremy's property interest lies only in his "legitimate claim of entitlement" to a free public education. But the amended complaint does not allege any infringement upon, or deprivation of, that property interest. Rather, the amended complaint alleges that Jeremy "has been deprived of the ability to enjoy the friendships he established with students in Guilford and to continue the activities he had enjoyed while in Guilford." Am. Compl. ¶ 44. Such an allegation does not raise a legally cognizable theory of liability under the Due Process Clause, requiring dismissal of Plaintiffs' procedural due process claim.

We also affirm the district court's dismissal of Plaintiffs' equal protection claim, because the amended complaint nowhere alleges that Defendants, in condoning or acquiescing in the students' mistreatment of Jeremy, were *motivated* in any way by Jeremy's size or ADHD. Moreover, because Plaintiffs' due process and equal protection claims were properly dismissed, we affirm the district court's dismissal of Plaintiffs' count-two § 1985(3) and state common-law conspiracy claims, which were based on the due process and equal protection claims.[1]

## II. *Count one's IDEA claim*

■ Plaintiffs' count one also alleges that Defendants deprived Jeremy of his statutory right to a FAPE. It is well-settled that, while the IDEA itself does not provide for monetary damages, plaintiffs may sue pursuant to § 1983 to enforce its provisions—including the right to a FAPE—and to obtain damages for violations of such provisions. *See D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 511 n. 10 (2d Cir.2006) (noting that "the IDEA creates rights in favor of disabled children and their families enforceable through § 1983," and collecting cases). The district court, however, failed to consider whether Plaintiffs sufficiently alleged a violation of Jeremy's *statutory* right to a FAPE; instead, the court considered Jeremy's right to a FAPE only to the extent that it might constitute a property interest protected by procedural due process. *See Smith,* 2005 WL 3211449, at *4–5. Moreover, in concluding that, "even if the right to a FAPE was considered constitutional or fundamental, it is evident that Jeremy did not, in fact, experience a denial of this right," the district court failed to construe all reasonable inferences in Plaintiffs' favor. *Id.* at *5. Specifically, the district court improperly found that Jeremy "voluntarily withdrew from Guilford High School," *id.*; Plaintiffs' allegation, reasonably construed in their favor, is that Jeremy was effectively *forced* to with-

---

1. Because we conclude that Plaintiffs have not sufficiently pled that the Board employees violated Jeremy's constitutional rights, Plaintiffs' claims against the Board itself must also fail. *See Curley v. Village of Suffern,* 268 F.3d 65, 71 (2d Cir.2001) ("[W]e have recognized that a municipality cannot be liable for inadequate training or supervision when the officers involved ... did not violate the plaintiff's constitutional rights.").

draw. Finally, the district court erroneously assumed that, in order to sufficiently assert a claim, Jeremy must have been *permanently* deprived of his right to a FAPE. *See id.* ("[T]here is no claim that [Jeremy] did not receive a free and appropriate public education in his *subsequent* placement." (emphasis added)); *see also id.* ("Assuming, arguendo, that the defendants had violated Jeremy's [FAPE] rights, ... placement in another school system would obviate the complaint" because "[i]t has long been held that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of due process if a meaningful post-deprivation remedy for the loss is available." (citation and internal quotation marks omitted)). Jeremy seeks monetary damages for the period during which his right to a FAPE was impinged; subsequent developments—while relevant to the question of whether Jeremy might properly seek injunctive relief—do not "obviate" the alleged violations.

For these reasons, we vacate the district court's dismissal of Plaintiffs' claim that the Defendants violated Jeremy's statutory right to a FAPE, and remand to the district court for further consideration. In doing so, we note two matters that, in addition to the merits of a putative claim under the IDEA, are better left to the district court to consider in the first instance. First, it is unclear whether subject matter jurisdiction exists over this claim. *See Polera v. Bd. of Educ.*, 288 F.3d 478, 483 (2d Cir.2002) ("A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction."); *but see id.* at 488 ("We recognize that the IDEA's exhaustion requirement does not apply in situations in which exhaustion would be futile because administrative procedures do not provide adequate remedies." (cita-

tion and internal quotation marks omitted)). Second, at oral argument before us, Plaintiffs' counsel asserted that Jeremy's ADHD—and not his diminutive stature—triggered the application of the IDEA. The underlying events described in the amended complaint, however, surround Jeremy's diminutive stature, not his ADHD. Because Jeremy's individual education plan is not before us on this appeal from the granting of a Rule 12(c) motion, we are unable to determine whether and to what extent liability may arise from conduct unrelated to the triggering disability under the IDEA. If the district court determines that it has subject matter jurisdiction over this claim, it may be appropriate for the court also to consider this question.

### III. *Defendants' counterarguments*

In light of our reinstatement of Plaintiffs' count-one IDEA claim, we now consider—and in doing so, reject—the various arguments Defendants have made as to why Plaintiffs' suit cannot proceed. First, Defendants argue that the appeal was untimely as to the first through fourth counts—which were not part of Plaintiffs' Rule 59(e) motion for reconsideration—because it was filed more than thirty days after the court granted Defendants' motion. We conclude that the appeal of these counts was timely. *See* Fed. R.App. P. 4(a)(4)(A)(iv). Second, Defendants argue that Plaintiffs have waived their arguments in count one because they failed to raise them in their Rule 59(e) motion for reconsideration. But such motions serve the limited purpose of allowing "the moving party [to attempt to] point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d

Cir.1995); *see also id.* ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."). Thus, there is no basis to Defendants' contention that arguments not raised in a Rule 59(e) motion are thereby waived.

Third, Defendants argue that Plaintiffs failed to allege that they had filed a written notice of claim with the Town or Board Clerk, as is required under Conn. Gen. Stat. § 7–465. But Defendants did not assert this as an affirmative defense in their response to Plaintiffs' amended complaint, and failed to include it as an argument in their papers for Rule 12(c) judgment on the pleadings. We therefore treat the argument as waived.

■ Fourth, Defendants claim that Plaintiffs failed specifically to plead their reliance on Conn. Stat. § 7–465, the relevant state indemnity statute. However, as Plaintiffs persuasively rejoin, Defendants' argument is premised on a Connecticut rule of practice, Conn. Practice Book § 10–3(a), which Connecticut state courts have held to be directory, not mandatory. *See Spears v. Garcia*, 66 Conn.App. 669, 676, 785 A.2d 1181 (2001) ("As long as the defendant is sufficiently apprised of the nature of the action ... failure to comply with the directive of Practice Book § 10–3(a) will not bar recovery."). Thus, Plaintiffs' suit is not necessarily barred by this defect in the amended complaint, and it cannot serve as a basis for affirming the Rule 12(c) dismissal of Plaintiffs' IDEA claim. We leave for the district court to consider on remand the question of whether Defendants were in fact "sufficiently apprised of the nature of the action." [2]

### IV. *Plaintiffs' remaining counts*

Plaintiffs' amended complaint also raised several state-law claims, i.e., count two's conspiracy claim based on state common law, and counts five and six. The district court below did not expressly consider them, and we therefore assume that the district court's dismissal of these claims was without prejudice, and in light of the then-absence of remaining federal claims. Given our remand of Plaintiffs' IDEA claim, these state claims must be reinstated. Should the district court on remand, however, conclude that the IDEA claim must be dismissed, we presume that it will once again dismiss Plaintiffs' state-law claims without prejudice.

In addition, given the reinstatement of Plaintiffs' IDEA and state-law claims, we also reinstate count seven of Plaintiffs' amended complaint.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED as to the dismissal of Plaintiffs' count-one due process and equal protection claims, and Plaintiffs' count-two (§ 1985 and state common law conspiracy claims); and VACATED and REMANDED as to Plaintiffs' count-one IDEA claim, counts five and six (state-law negligence claims), and Plaintiffs' claim for reimbursement in count seven. Costs will abide the ultimate result.

**2.** We note, in passing, that the district court erred in suggesting that, with respect to Plaintiffs' federal claims, the Board employees might be entitled to qualified immunity. *See Smith*, 2005 WL 3211449, at *3. *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1146–47 (2d Cir.1995) ("[T]he personal privilege ... of qualified immunity ... [is] available to governmental officials only with respect to damage claims asserted against them in their *individual* capacities." (citation and quotation marks omitted; emphasis added)).