*Khanimova v. Samuels*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of June, two thousand twenty-six.

PRESENT:  STEVEN J. MENASHI,
SARAH A. L. MERRIAM,
*Circuit Judges*,
SANKET J. BULSARA,
*District Judge*.[*]

_____

Svetlana Khanimova, as parent and natural guardian of R.N., and Svetlana Khanimova, individually,

  *Plaintiff-Appellant*,

  v.         No. 25-1396

Kamar H. Samuels, in his official capacity as chancellor of the New York City Department of Education, New York City Department of Education,

  *Defendants-Appellees*.[†]

_____

[*] Judge Sanket J. Bulsara of the United States District Court for the Eastern District of New York, sitting by designation.

[†] The Clerk of Court is directed to amend the caption as set forth above. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Chancellor Kamar H. Samuels is substituted for David C. Banks.

*For Plaintiff-Appellant*:     Rory J. Bellantoni, David Markese, Liberty & Freedom Legal Group, New York, NY

*For Defendants-Appellees*:     AMY MCCAMPHILL (Richard Dearing, Melanie T. West, *on the brief*), *for* Muriel Goode-Trufant, Corporation Counsel of the City of New York, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Oetken, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Svetlana Khanimova is the mother of R.N., a disabled child. After Defendant-Appellee New York City Department of Education ("DOE") did not provide R.N. with a "free appropriate public education" ("FAPE") for the 2023-2024 school year, Khanimova re-enrolled R.N. at the International Institute for the Brain ("iBrain"), a private school that R.N. attended from October 2021 until October 2023.

Khanimova then sought tuition reimbursement for the 2023-2024 school year from the DOE pursuant to the Individuals with Disabilities Education Act ("IDEA"). An impartial hearing officer ("IHO") denied her request, determining that she had not demonstrated that iBrain was an appropriate unilateral placement for the 2023-2024 school year. A state review officer ("SRO") dismissed her appeal of that denial. Khanimova sought review of those decisions in federal court. The district court granted summary judgment to the DOE, concluding that Khanimova had failed to carry her burden to prove iBrain was an appropriate placement for R.N. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

# I

"We review de novo a district court's grant of summary judgment in an IDEA action." *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021). "In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but 'the procedure is in substance an appeal from an administrative determination, not a summary judgment motion.'" *Id.* (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012)). "The district court therefore 'engages in an independent review of the administrative record and makes a determination based on a preponderance of the evidence.'" *Id.* (alteration omitted) (quoting *M.H.*, 685 F.3d at 240). To be sure, "federal courts reviewing administrative decisions must give 'due weight' to these proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *M.H.*, 685 F.3d at 240 (internal quotation marks and citation omitted). But "the 'due weight' we ordinarily must give to the state administrative proceedings is not implicated with respect to … an issue of law; namely, the proper interpretation of the federal statute and its requirements." *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1122 (2d Cir. 1997).

"The IDEA seeks to provide to all children with disabilities 'a free appropriate public education that emphasizes special education and related services.'" *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 831 (2d Cir. 2014) (quoting 20 U.S.C. § 1400(d)(1)(A)). "States receiving federal funding must provide children with disabilities with a FAPE 'tailored to meet the unique needs of a particular child.'" *Id.* (quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998)). For that reason, "[t]he IDEA requires states to create an individualized education program ('IEP') for each disabled child." *Id.* (citing 20 U.S.C. § 1412(a)(4)). "The IEP is 'a written statement that sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed

instruction and services that will enable the child to meet those objectives.'" *Id.* (quoting *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 507-08 (2d Cir. 2006)).

"Where the state fails to provide a FAPE to a disabled child, the parents may enroll the child in a private school and seek reimbursement for the cost of the private school education from the local education agency." *Id.* (citing 20 U.S.C. § 1412(a)(10)(C)(i)-(ii)). "In determining whether parents are entitled to reimbursement, the Supreme Court has established a two pronged test: (1) was the IEP proposed by the school district inappropriate; [and] (2) was the private placement appropriate to the child's needs." *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363 (2d Cir. 2006) (citing *Sch. Comm. of Town of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985), and *Florence County Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 12-13 (1993)).

If a school district proposes an inappropriate IEP and the parents unilaterally place the child, the "[p]arents seeking reimbursement for a private placement bear the burden of demonstrating that the private placement is appropriate, even if the proposal in the IEP is inappropriate." *Id.* at 364. "The parents' placement of the child must be reasonably calculated to enable the child to receive educational benefits, such that the placement is likely to produce progress, not regression." *C.L.*, 744 F.3d at 836 (internal quotation marks and citations omitted). "Progress may be demonstrated by grades, test scores, regular advancement, or other objective evidence, but no single factor is dispositive as 'courts assessing the propriety of a unilateral placement must consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs.'" *Id.* (alteration omitted) (quoting *Frank G.*, 459 F.3d at 364).

## II

In this case, the DOE does not argue that the school district provided R.N. with an "appropriate" IEP. *Id.* at 831. The question is therefore whether Khanimova's unilateral placement of R.N. for the 2023-2024 school year was

4

appropriate. The SRO concluded that it was not. We conclude, based on an "independent review of the administrative record," that the SRO did not err in reaching that conclusion. *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 387 (2d Cir. 2014).

Earlier this term, our court concluded that the administrative bodies and the district court correctly denied Khanimova's reimbursement request for the 2022-2023 school year. *See Khanimova v. Samuels*, No. 25-808, 2026 WL 456507 (2d Cir. Feb. 18, 2026). The facts here resemble the facts in that case. In the earlier case, the record demonstrated that iBrain had developed an IEP for R.N. but did not establish that R.N. received the services "at the levels recommended in its IEP." *Id.* at *2. The court concluded that "the gap between the services recommended in iBrain's IEP and the services iBrain provided to R.N. supports the SRO's conclusion that Khanimova has not met her burden of showing that iBrain rendered the 'services' 'necessary to permit' R.N. 'to benefit from' its 'educational instruction.'" *Id.* (quoting *Frank G.*, 459 F.3d at 365).

The record here is not meaningfully different. While iBrain developed an IEP for R.N., Khanimova did not present credible evidence that the school delivered the recommended services. The SRO observed that "the hearing record lacks any credible evidence corroborating that the services described in the February 2023 IEP were delivered to the student during the 2023-24 school year," and "[t]he parent did not offer any documentary evidence dated during the 2023-24 school year, … such as a progress report or service delivery records." App'x 76. We have previously held that a unilateral placement was inappropriate "when the record [did] not contain specific evidence of what services were actually provided to the student to address the disability that the private placement [was] intended to ameliorate." *Hardison*, 773 F.3d at 388. Under that precedent, Khanimova did not carry her burden here.

Khanimova also did not present evidence of R.N.'s progress. As we said in the earlier case, "[e]vidence of the student's progress during the school year for

which parents seek reimbursement may help demonstrate the propriety of the private-school placement, notwithstanding the school's failure to provide all the recommended services." *Khanimova*, 2026 WL 456507, at *3. We decided that "the SRO properly concluded that Khanimova did not present sufficient evidence of R.N.'s progress at iBrain to meet her burden of proving that iBrain was an appropriate placement for the 2022-2023 school year." *Id.*

The record here is again similar. As the IHO noted, "[t]he only professional witness [who] testified from the school, the Deputy Director, has only been at the school since February. He does not teach or provide any services" to R.N. App'x 49. He was unable "to answer many questions due to the subject-matter being 'beyond his scope,' particularly with regard to the delivery of related services." *Id.* at 50. But "[a] review of [R.N.'s] schedule at the private school indicates that she spends the vast majority of her day with related service providers," and the service providers did not testify. *Id.* Moreover, "[d]espite testimony that there is data-tracking, daily reports/logs and quarterly progress reports, none of this information was entered into the record." *Id.*

Notably, Khanimova "objected to the inclusion of progress reports into the record when the District sought to enter them. The 2023-24 school year began for [R.N.] in July of 2023, [so] surely progress notes or a quarterly progress report should have been produced by October of 2023." *Id.* Khanimova, however, did not produce such notes or reports. Given the absence in the record of "'objective evidence' of progress," *Hardison*, 773 F.3d at 388, we do not disturb the decision of the SRO.

### III

We also conclude that Khanimova did not carry her burden to demonstrate that she should be reimbursed for expenditures on "related services." As the district court noted, "[u]nder the IDEA, a FAPE includes both 'special education' and those 'related services' that are 'required to assist a child with a disability to benefit from special education.'" *Khanimova v. Aviles-Ramos*, No. 24-CV-4304, 2025

WL 1266891, at *6 (S.D.N.Y. Apr. 30, 2025) (quoting 20 U.S.C. § 1401(9), (26)(A)). "These related services include 'transportation' and 'school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child.'" *Id.* (quoting 20 U.S.C. § 1401(26)(A)).

Khanimova hired a private nurse for R.N. and paid for R.N.'s transportation to iBrain. She sought reimbursement for those expenditures. Regarding the private nurse, we agree with the district court that the service was inappropriate because R.N. "attended the private school up until February of 2023 without a 1:1 nurse." App'x 51. In addition, "there [were] only 39 students in the school building" at R.N.'s school, but there were "approximately 17 nurses in the school building." *Id.* In R.N.'s class, "at least 2 other students ha[d] 1:1 nurses," so there was "1 teacher, 1 teaching assistant, 6 paraprofessionals and 3 1:1 nurses assigned to [R.N.'s] classroom," and all of these staff members were "trained in seizure protocols." *Id.* The Deputy Director of iBrain who testified as a witness for Khanimova "was not familiar with [R.N.'s] medical needs and was not aware of the frequency of any seizures or the need for medical intervention" and, as a result, "[t]he record is devoid of any reliable medical evidence necessitating the provision of a 1:1" nurse. *Id.* at 50-51.

Regarding the transportation, the IHO ordered the DOE to pay for transportation "to the extent that it is not already paying for a route to and from the Student's home" because R.N.'s sister already uses transportation services from Sisters Transportation to attend iBrain. *Id.* at 51. The district court agreed "with the IHO's reasoning that the 'related services' requirement in the IDEA would not require the DOE to double-pay for a school bus route for which it already pays hundreds of thousands of dollars per year." *Khanimova*, 2025 WL 1266891, at *6. We in turn agree with the district court.

7

\*     \*     \*

"In sum, the district court properly deferred to the SRO's well-reasoned decision that Khanimova was not entitled to tuition reimbursement because she failed to demonstrate that iBrain was an appropriate placement for the [2023-2024] school year." *Khanimova*, 2026 WL 456507, at \*5. We have considered Khanimova's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court