17-3248 (L)
W.A., M.S. v. Hendrick Hudson Central School District

In the

# United States Court of Appeals

for the

# Second Circuit

August Term, 2018

Argued:   February 21, 2019
Decided: June 14, 2019

Docket Nos. 17-3248, 17-3313

W.A., M.S., INDIVIDUALLY AND ON BEHALF OF W.E.,

*Plaintiffs-Counter-Defendants-Appellees-Cross-Appellants*,

v.

HENDRICK HUDSON CENTRAL SCHOOL DISTRICT,

*Defendant-Counter-Claimant-Appellant-Cross-Appellee*. [†]

Appeal from the United States District Court
for the Southern District of New York (Karas, *J.*)
No. 14-3067

Before:
    KEARSE, JACOBS, HALL, *Circuit Judges*.

[†] The Clerk of Court is requested to amend the caption to conform to the above.

Appeal and cross-appeal from the September 13, 2017 judgment of the United States District Court for the Southern District of New York (Karas, *J.*) incorporating its November 23, 2016 opinion and order granting in part and denying in part the parties' cross-motions for summary judgment and its July 18, 2017 opinion and order granting Defendant's motion for summary judgment and denying Plaintiffs' cross-motion.   We hold that the district court properly deferred to the decision of the New York State Review Officer ("SRO"), which concluded that student W.E. was not denied a free and appropriate public education for the eighth-grade school year and that Northwood School ("Northwood") was not an appropriate unilateral private school placement for the ninth-grade school year, and thus affirm the district court's November 23, 2016 opinion and order to the extent it granted summary judgment to Defendant.   Because the district court failed to accord appropriate deference to the SRO's conclusion that Northwood did not provide W.E. specially designed instruction so as to constitute an appropriate private school placement for the tenth-grade school year, we reverse the portion of the district court's November 23, 2016 opinion and order granting summary judgment to Plaintiffs and vacate the award of tuition reimbursement to Plaintiffs for that school year.   We also affirm the district court's July 18, 2017 opinion and order granting Defendant's motion for summary judgment and vacating the award of compensatory education for the eighth-grade school year.

AFFIRMED IN PART, REVERSED AND VACATED IN PART.

DANIEL PETIGROW, (David H. Strong, *on the brief*), Thomas, Drohan, Waxman, Petigrow & Mayle, LLP, Hopewell Junction, NY, *for Defendant-Counter-Claimant-Appellant-Cross-Appellee.*

WILLIAM A. WALSH, New York, NY (Erica M. Fitzgerald, Littman Krooks LLP, White Plains, NY, *on the brief*), *for Plaintiffs-Counter-Defendants-Appellees-Cross-Appellants.*

Catherine Merino Reisman, Ellen Saideman, Selene Almazan-Altobelli, Towson, MD, *for Amicus Curiae Council of Parent Attorneys and Advocates, Inc.*

HALL, *Circuit Judge*:

In the United States District Court for the Southern District of New York (Karas, *J.*), W.A. and M.S. ("the Parents"), individually and on behalf of their son, W.E., commenced two actions against the Hendrick Hudson Central School District ("the District") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* W.E. attended public school in the District and began suffering from conventional and abdominal migraines during middle school, which caused him to miss over 100 days of eighth grade. The District eventually classified W.E. as suffering from a disability under the IDEA's "other health impairment" designation, but the Parents were not satisfied with the individualized education program the District prepared for W.E.'s upcoming ninth-grade school year. The Parents removed W.E. from the District and enrolled him at Northwood School ("Northwood"), a private school in the Adirondacks, for his ninth- and tenth-grade school years. While at Northwood

3

W.E.'s absences from school diminished significantly, and he experienced notable improvement in his social and academic engagement.

Following administrative hearings before a New York State Impartial Hearing Officer ("IHO") and cross-appeals before a State Review Officer ("SRO"), the Parents brought these two federal court complaints pursuant to Section 1415 of the IDEA, 20 U.S.C. § 1415(i)(2)(A). In Case One, the Parents alleged that the District violated W.E.'s right to a free and appropriate public education ("FAPE") for his eighth- and ninth-grade school years (2010-11 and 2011-12) and challenged the SRO's ruling of January 31, 2014, which held that Northwood was not an appropriate placement for ninth grade. In Case Two, the Parents challenged the March 18, 2014 decision of the SRO and asserted that the District violated W.E.'s right to a FAPE for his tenth-grade school year (2012-13); they again sought tuition reimbursement for their unilateral placement of W.E. at Northwood for tenth grade. The two actions were consolidated by the district court.

On November 26, 2016, the district court affirmed the SRO's ruling in Case One in all respects but declined to defer to the SRO in Case Two, holding instead that Northwood was an appropriate placement during tenth grade and ordering that the District reimburse the Parents for W.E.'s tuition at Northwood for that

4

year. *See W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 219 F. Supp. 3d 421 (S.D.N.Y. 2016). It also granted the District's motion to amend to add a counterclaim regarding costs awarded by the IHO in Case One. *Id.* at 484. On July 18, 2017, the district court granted summary judgment to the District on the counterclaim, vacating the award of compensatory education in the form of counseling reimbursement for the eighth-grade year based on its affirmance of the SRO's ruling that W.E. was not denied a FAPE for that academic year.[1] *See W.A. v. Hendrick Hudson Cent. Sch. Dist.*, No. 14-CV-3067 (KMK), 2017 WL 3066888 (S.D.N.Y. July 18, 2017).

The District appeals the portion of the district court's November 23, 2016 decision and order awarding summary judgment to the Parents and ordering reimbursement of W.E.'s tuition for his private education at Northwood during W.E.'s tenth-grade year. The Parents cross-appeal the portion of the district court's November 23, 2016 opinion and order awarding summary judgment to the District and holding that the District did not violate its "Child Find" obligation

---

[1] Under the IDEA, "compensatory education is an available option . . . to make up for denial of a free and appropriate public education." *P. ex rel. Mr. and Mrs. P. v. Newington Bd. of Ed.*, 546 F.3d 111, 123 (2d Cir. 2008).

5

under the IDEA[2] and thus did not deny W.E. a FAPE for the eighth-grade year in accord with its statutory obligations, and further holding that Northwood was not an appropriate placement for W.E.'s ninth-grade school year so as to entitle the Parents to tuition reimbursement for W.E.'s private education during ninth grade. The Parents also cross-appeal the district court's July 18, 2017 opinion and order awarding summary judgment to the District and vacating the award of compensatory education for the eighth-grade school year.

Because we hold that the district court properly deferred to the SRO's conclusions regarding the timeframe during which the District's Child Find obligation was triggered and its ruling that Northwood failed to provide meaningful counseling or specially designed instruction for W.E.'s ninth-grade academic year, we affirm the district court's November 23, 2016 opinion and order as to Case One. However, because the district court did not defer to the similarly well-reasoned opinion of the SRO which held that Northwood failed to provide specially designed instruction for the tenth-grade academic year in spite of W.E.'s progress in the private school placement, we reverse the district court's November

---

[2] The IDEA's "Child Find" obligation is explained in the context of our discussion of the statutory framework, *see infra*, slip op. pp. 7–8.

23, 2016 opinion and order with respect to Case Two and vacate the award of tuition reimbursement for the tenth-grade academic year. We affirm the district court's July 18, 2017 opinion and order granting the District's motion for summary judgment and vacating the award of compensatory education for the eighth-grade school year.

## BACKGROUND

### I.    Statutory Framework

This case arises under the IDEA, 20 U.S.C. § 1400 *et seq.* The IDEA was designed, *inter alia*, to protect the rights of children with disabilities as well as the rights of their parents and "to ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." *Id.* § 1400(d)(1)(A). The IDEA enforces a "Child Find" obligation which "requires each State to have policies and procedures to ensure that all children with disabilities are identified and evaluated for special education and related services." *Mr. P v. W. Hartford Bd. of Educ.*, 885 F.3d 735, 749 (2d Cir.), *cert. denied*, 139 S. Ct. 322 (2018). A school district must conduct an evaluation of a child

suspected of suffering a disability "within a reasonable time" after it receives "notice of a likely disability." *Id.* at 750.

The IDEA also requires that school districts create an individualized education program ("IEP") for each qualifying child. *See R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (citing 20 U.S.C. § 1414(d)). "The IEP is the centerpiece of the IDEA's education delivery system for disabled children" and serves as the means by which the State delivers a disabled child's FAPE. *Mr. P*, 885 F.3d at 741 (internal quotation marks and brackets omitted). It constitutes "a written statement that sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *R.E.*, 694 F.3d at 175 (quoting *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 507–08 (2d Cir. 2006)). In New York, local Committees on Special Education ("CSEs") are responsible for developing IEPs and are tasked with identifying an educational program tailored to the student's particular needs and achievement levels. *See id.*

Parents who believe a child has been denied a FAPE may enroll the child in a private school at their own financial risk and seek retroactive reimbursement

from the school district for the cost of the private school. *A.C. ex rel. M.C. v. Bd. of Educ. of The Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009). In New York, such claims are first adjudicated before an IHO and may then be appealed to the SRO. *See R.E.*, 694 F.3d at 175 (citing N.Y. Educ. Law §§ 4404(1)-(2)). The IDEA provides for judicial review of the SRO's decision by a federal district court. *Id.* (citing 20 U.S.C. § 1415(i)(2)(A)).

## II. Factual Background

W.E. attended public school in the District through the eighth grade. He performed well and was engaged in several extracurricular programs until the sixth grade, when he developed severe internal pain that led to an emergency appendectomy and caused him to miss at least 26 days of school. W.E. was diagnosed with abdominal migraines which persisted throughout seventh grade and which were increasingly compounded by conventional migraines, causing him to miss at least as many school days as he had the prior year. His headaches continued to worsen through the spring of seventh grade when W.E.'s mother,

M.S., referred W.E. to the District's Section 504 Committee [3] and requested tutoring, which the District approved.

As part of the Section 504 process, Dr. Richard Brodsky, the school psychologist, performed a psycho-educational evaluation of W.E. That evaluation yielded above-average scores on a cognitive test measuring W.E.'s "General Intellectual Ability." *W.A.*, 219 F. Supp. 3d at 430. Except for math fluency, in which W.E. fell into the "low average" range, the evaluation also yielded average to advanced scores on a number of subtests targeted to measure academic achievement. *Id.* Dr. Brodsky also administered the Behavior Assessment System for Children-Second Edition ("BASC-2") to W.E. and to two of his teachers on W.E.'s behalf. That assessment generated "at-risk" scores in the areas designated "Relations to Parents" and "Attitudes Towards School." *Id*. One of W.E.'s teachers also produced a "clinically significant score" reflecting "a high level of maladjustment" as a result of W.E.'s somatization. *Id.* In June 2010, the District's Section 504 Committee met and found W.E. eligible for an accommodation based upon his migraine disability. The accommodation

---

[3] As the district court explained, "[a] Section 504 committee is so named as a reference to § 504 of the Rehabilitation Act," 29 U.S.C. § 794. *W.A.*, 219 F. Supp. 3d at 429 n.1.

consisted of extra time to complete assignments, nursing services as needed, and access to class notes and home tutoring.

W.E.'s eighth-grade year was increasingly fraught, with his migraines causing him to miss a total of more than 100 school days. Although he did well in some classes, he struggled in others, missed some state exams, and became more socially isolated. W.E. received some of the tutoring to which he was entitled under his Section 504 plan, but the Parents were not satisfied with the assigned tutor, and efforts to find a replacement interrupted the tutoring before it was recommenced. In December 2010, M.S. notified the District that she observed her son to be in "crisis" and requested certain interventions; she also contacted Dr. Brodsky, who recommended private relaxation counseling for W.E. *Id.* at 433. Per M.S.'s request, the District scheduled a meeting for January 5, 2011, to review W.E.'s Section 504 plan, but M.S. later emailed Caroline Almeida, the District's Assistant Director of Pupil Personnel, to suggest canceling the meeting in light of W.E.'s progress over the winter break and M.S.'s understanding that he "had all the program modifications in place." *Id.* at 434 (brackets omitted).

In mid-January 2011, the Parents began the process of looking into a private school for W.E.'s upcoming ninth-grade year. M.S. and W.E. visited Northwood,

11

a boarding school in the Adirondacks, in late February 2011. The school is a self-described small college preparatory school that strives to incorporate the values of integrity, compassion, responsibility, courage, and respect into its pedagogy and operations. During this initial visit W.E. grabbed M.S.'s coat and asked, "Can I go here?" *Id.* at 438. W.E. was admitted, and the Parents paid a deposit and signed an enrollment contract in March 2011. Later that spring M.S. and W.E. visited Northwood again with W.A. and confirmed W.E.'s intent to attend in the fall.

Meanwhile, throughout the spring of W.E.'s eighth-grade year, discussions with the District continued. By April 2011 the Parents had referred W.E. to the local CSE to determine his eligibility for special education services under the IDEA's "other health impairment" ("OHI") classification; they also requested an emergency Section 504 meeting, which Ms. Almeida promptly scheduled. At that meeting of April 15, 2011, the Section 504 Committee recommended counseling. Dr. Brodsky suggested it should take place outdoors. The Section 504 Committee also recommended that a psychiatric evaluation be conducted in preparation for the upcoming CSE meeting. An evaluation was scheduled with a psychiatrist named Dr. Hahn. Dr. Hahn prepared a report based on his

12

consultation with M.S. but was not able to evaluate W.E. due to his migraines and/or anxiety. His report recommended a holistic approach to helping W.E. learn how to cope with his stress, including bio-feedback and relaxation methods, mindfulness training, play therapy, and access to an outdoor adventure-based program.

The CSE meeting was held on May 25, 2011, without a psychiatric evaluation. The Parents took issue with a number of aspects of that meeting, including the District's failure to include a parent on the CSE. In advance of a follow-up CSE meeting on August 26, 2011, the Parents submitted letters from three different clinicians who recommended a smaller school environment for W.E. or a non-mainstream placement. The CSE ultimately classified W.E. as a student with a disability under the OHI designation. A draft IEP recommended twice-weekly individual counseling, program accommodations consisting of access to class notes, nursing services, and extra time for completing assignments, and classes with a student-to-staff ratio of 8:1:1.

Kathleen Coughlin, the District's director of Pupil Personnel Services, later testified that she discussed two programs at the August 2011 CSE meeting that might meet W.E.'s needs for his ninth-grade year: the BOCES (Board of

Cooperative Educational Services) program in Southern Westchester and the one in Putnam Northern Westchester. According to Ms. Coughlin, she explained to W.E.'s Parents that neither option could be recommended as a final placement until the referral process was complete but that the CSE could offer interim home instruction pending completion of an expedited referral process. The Parents ultimately concluded that BOCES was not an appropriate placement for W.E. They formally withdrew W.E. from the District by letter dated August 30, 2011.[4]

W.E. began private school at Northwood at the start of his ninth-grade school year. At Northwood the student-teacher ratio in W.E.'s classes was below 8:1 and W.E. was assigned a nurse as a faculty advisor; another nurse lived on his dormitory floor. Some classes were structured around a large oval table so as to require participation from all students, and the school incorporated organized study periods as well as outdoor activities into its educational structure. Northwood ensured that W.E.'s teachers were aware of his accommodation plan, which required that W.E. receive additional time for in-class assignments, preferential seating, graphic organizers or guided notes to facilitate verbal

---

[4] In November 2011, the Parents visited the programs recommended by the CSE and learned that both had a student-to-teacher ratio of 12:1:1 as opposed to the 8:1:1 ratio proposed in W.E.'s draft IEP.

lectures, and regular sessions with the school counselor. W.E. earned passing grades in all of his ninth-grade classes and, more notably, missed only nine days of school due to his migraines. He also grew more socially adjusted, received positive feedback from teachers, and tapered off his mood-stabilizing medications. Dr. Williams later testified that Northwood "appeared to be highly appropriate for W.E. as reflected in his dramatic improvement in headache frequency that had persisted for the first time in previous years beyond the summer well into the fall term and its conclusion." *Id.* at 442 (brackets omitted). Some of W.E.'s teachers, however, indicated that he struggled with organization skills, preparing for class, and handing in assignments on time and that his grades were below his potential. One teacher cited W.E.'s poor behavior in an incident in which she needed to remove him from class due to rude remarks he made to another student. In February 2012, Northwood accepted W.E.'s re-enrollment for his tenth-grade year.

In April 2012, the District began formulating a program recommendation for W.E.'s tenth-grade year despite W.E.'s attendance in private school. Reports provided by W.E.'s teachers at Northwood noted his lack of organization, missing class assignments, and stress-triggered migraines alongside his strong intellectual abilities. A February 2012 BASC-2 test showed significant improvement in

W.E.'s attitude toward school, but the BASC-2 completed by one of W.E.'s teachers at Northwood rated W.E. "as clinically significant for somatization and at risk for social skills." *Id.* at 443. The CSE held W.E.'s annual review meeting on June 14, 2012. Dr. Williams sent a letter to the CSE in advance of that meeting describing W.E.'s "remarkable" progress, which he attributed in part to his placement at Northwood; Dr. Williams recommended that W.E. not undergo any change of placement for the upcoming year. *Id*. At the meeting the Parents also shared their view that W.E. was experiencing fewer migraines, earning average grades, and engaging in various outdoor activities at Northwood. The IEP that was finalized for W.E. recommended a student-teacher ratio of 8:1:1 and participation in Southern Westchester BOCES at Irvington High School's TSP (Therapeutic Support-Fragile Program). The Parents expressed concerns with this prospective placement to District officials during a subsequent CSE meeting in August 2012. They rejected the IEP by letter dated September 20, 2012.

W.E.'s accommodation plan for his tenth-grade year at Northwood included the four previous accommodations from his ninth-grade year as well as three new accommodations: use of an iPad in class, a supervised study hall, and access to a school nurse. In addition to continuing what was essentially informal counseling

16

from the prior year with Donald Mellor, an English teacher and Northwood counselor, Dr. Williams advocated for "a more systematic psychotherapy program," and in the spring of his tenth-grade year W.E. began meeting weekly with a private social worker.  *Id.* at 446–47.  Reports from W.E.'s teachers throughout his tenth-grade year were again inconsistent, containing a mixture of praise for his academic achievement and criticism of his lack of organization, uneven performance, intermittent lack of engagement, and occasionally inappropriate behavior.  W.E. was also able to play soccer and participate in an outdoor program in Yellowstone and seemed to grow in his social comfort and confidence, though he experienced an especially severe migraine in May 2013. Several clinicians later testified that Northwood was appropriate for W.E.'s emotional and mental health needs.

### III. Administrative Proceedings

#### A. Case One: The Eighth- and Ninth-Grade School Years

##### i. *IHO Hearing and Decision*

In November 2011, W.E.'s Parents requested an impartial hearing, asserting that the District denied W.E. a FAPE for W.E.'s eighth- and ninth-grade academic years.  The Parents sought reimbursement for W.E.'s tuition at Northwood for

17

ninth grade and compensatory counseling services for the eighth-grade school year. A hearing was conducted before an IHO over nine days between February 1 and April 2, 2012.

On May 30, 2012, the IHO issued a 37-page decision in which it concluded that the District violated its Child Find obligation and failed to provide W.E. with a FAPE for W.E.'s eighth-grade year. According to the IHO, the District's Child Find obligation was triggered by January 3 of the eighth-grade school year, by which time W.E. had exhibited a pattern of missing an increasingly high number of school days for health reasons and numerous teachers had reported being unable to issue grades for W.E. due to missing assignments. The IHO also noted M.S.'s outreach to Dr. Brodsky during December 2010, which the IHO found also should have put the District on notice even in the face of M.S.'s sometimes conflicting signals about the status of her son's wellbeing. Additionally, W.E.'s clinically significant score regarding somatization on the BASC-2 from the previous spring had already triggered the accommodations that were developed in W.E.'s June 2010 Section 504 plan, and the IHO noted that by January 3, 2011, it should have been apparent to the District that this earlier plan was not fulfilling W.E.'s needs. The IHO further concluded that had the CSE timely convened, the

18

record evidence would have supported a finding that W.E. satisfied the criteria for the IDEA's OHI designation.

The IHO ordered the District to reimburse W.E.'s Parents for therapy sessions that provided Dr. Williams the diagnostic information used in preparing his August 2011 evaluation report and which the District relied upon in developing W.E.'s IEP. It also ordered reimbursement for five therapy sessions provided by Dr. Andrew Robins during W.E.'s eighth-grade year and payment for an additional fifteen hours of counseling. The IHO, however, denied the Parents' request for 200 hours of compensatory education in the form of tutoring, due to their failure to demonstrate that W.E. was in need of academic remediation.

As for W.E.'s ninth-grade year, the IHO concluded that the District failed to provide W.E. a FAPE by neglecting to complete timely its evaluation of W.E. and arrange for an appropriate placement for that school year. The IHO rejected the District's argument that the Parents' failure to produce W.E. for a psychiatric evaluation excused its failure to evaluate W.E. within the 60-days required by applicable State regulations, reasoning that "the District had the affirmative obligation to get the evaluation conducted even if it meant sending a psychiatrist

to the student's home" if it thought the evaluation necessary.[5]   Special Supplemental Appendix ("Sp. Supp. App.") 28.

Even though the IHO found that the District denied W.E. a FAPE, it ruled that the Parents were not entitled to tuition reimbursement because they did not meet their burden of proving that Northwood was an appropriate placement for W.E.   After reviewing in detail the relevant evidence presented by the Parents, including testimony offered by Dr. Williams, Dr. Robins, and Mr. Mellor, the IHO concluded that there was no evidence that Northwood was tailored to addressing any of W.E.'s psychological or emotional issues, which the weight of the testimony indicated were the underlying triggers of his migraines.   The IHO noted that Northwood does not have a psychologist or psychiatrist on staff and that the only counseling W.E. received at Northwood was in the form of informal check-ins initiated by Mr. Mellor.   The IHO also found that while W.E. achieved "average to excellent grades," he continued to exhibit struggles with organization and study skills, which Northwood did not work with him to remedy.   *Id*. at 37.   As for

---

[5] The IHO rejected the Parents' argument that the District's failure to include a parent member on the CSE deprived W.E. of a FAPE but found that the District's failure to include a special education teacher as well as a general education teacher who was familiar with W.E. on the CSE contributed to the District's violation of the IDEA.

equitable considerations, while not required to weigh them in light of its conclusion that the District's reimbursement obligation was not triggered, the IHO nonetheless noted that W.E.'s Parents fully cooperated with the District and did not impede the CSE process. The IHO rejected the District's argument that the Parents never intended to send W.E. anywhere but Northwood, finding instead that they were open to the District's recommendations and "lived with very real uncertainty about whether" W.E. would be able to attend Northwood as they had hoped. *Id.*

## ii. *SRO Appeal and Decision*

The Parents appealed the IHO's denial of reimbursement and request for compensatory education services to the SRO and the District cross-appealed the IHO's finding that the District denied W.E. a FAPE for the eighth- and ninth-grade school years. The SRO ruled that, contrary to the IHO's finding, the District did not have reason to suspect that W.E. had a disability requiring special education prior to April 2011 due to W.E.'s overall positive educational progress with the accommodations the District provided him in the Section 504 plan developed in June 2010. In reaching this conclusion, the SRO cited frequent communications between W.E.'s Parents and the District's personnel between winter 2010 and

21

spring 2011 evidencing the District's commitment to fulfilling W.E.'s June 2010 Section 504 plan, M.S.'s incidences of retracting earlier requests for intervention in the face of W.E.'s improvement and in the interest of maintaining "normalcy" for her son, W.E.'s high level of academic achievement as reflected on his eighth-grade report card and state exams, and positive feedback from teachers regarding W.E.'s intellectual abilities, behavior, and attitudes. *Id.* at 69–72. The SRO also found that W.E.'s BASC-2 results from the previous spring were not enough to put the District on notice given that the report did not cite any history of academic difficulties or current interventions and Dr. Brodsky's report otherwise credited W.E. with appropriate to above-average levels of attention, intelligence, conceptual thinking, language, and academic skills. The SRO accordingly reversed the IHO's finding that the District violated its Child Find obligation for W.E.'s eighth-grade school year. And it affirmed the IHO's denial of the Parents' request for 200 hours of compensatory home instruction while declining to disturb the award of counseling reimbursement based on its understanding that the District did not appeal that aspect of the IHO's ruling.

As for W.E.'s ninth-grade year, the SRO concluded that the District violated the IDEA by failing to have a finalized IEP in place at the start of ninth grade; it

22

therefore affirmed the IHO's ruling that W.E. was denied a FAPE for that year.

The SRO next affirmed the IHO's finding that Northwood was not an appropriate

placement for W.E. entitling the Parents to tuition reimbursement. After

reviewing the relevant evidence, the SRO concluded that while W.E.'s social,

emotional, and academic functioning improved at Northwood:

> the hearing record lacks evidence demonstrating that [Northwood]
> provided instruction that was designed to address the student's tendencies
> to develop physical symptoms and exhibit school avoidance when under
> stress, or his need to develop coping skills to manage stress related to
> academics and social interactions, and to improve his organizational/study
> skills related to academics, and, that the instruction that the student received
> during the 2011-12 school year was, in fact, available to all students enrolled
> at [Northwood]. The hearing record fully supports the IHO's
> determination that the parents presented no evidence that the student's
> underlying emotional issues, organizational issues, or study skills were
> addressed by [Northwood].

*Id.* at 84–85. In light of its conclusion the SRO declined to consider whether the

equities supported the Parents' claim.

### B. Case Two: The Tenth-Grade School Year

#### i. *IHO Hearing and Decision*

The Parents filed their Case Two complaint notice in April 2013, alleging

that the District failed to provide W.E. a FAPE for W.E.'s tenth-grade school year

and seeking tuition reimbursement for that year at Northwood. Following a six-

day hearing, the IHO issued a decision on December 17, 2013, in which it concluded that the District's IEP process failed to account for W.E.'s extraordinary characteristics and that the resultant IEP was not responsive or appropriately tailored to W.E.'s needs, thus denying W.E. a FAPE during his tenth-grade year. In so ruling, the IHO separately addressed what it identified as the District's alleged procedural and substantive violations of the IDEA. In the former category the IHO found that by recommending both a student-teacher ratio of 8:1 and mainstream placement in Math, English, and Science (which have a student-teacher ratio of 24:1), W.E.'s IEP contained an internal inconsistency, which the District never attempted to reconcile. The IHO declined to reach the alleged substantive violations in light of its conclusion that the District's IEP constituted a procedural violation that denied W.E. a FAPE but noted W.E.'s "significant social and educational progress in the prior school year at" Northwood. Supplemental Appendix ("Supp. App.") 126.

The IHO next ruled that by "providing the Student with educational instruction specially designed to meet his needs, including certain neccesary[sic] support services," Northwood was an appropriate placement for W.E. *Id.* at 127. The IHO noted that Northwood's small class size comported with W.E.'s IEP, and

that Northwood assisted W.E. with his need for organization during a free period, in addition to providing two supervised study halls and a nightly study session monitored by a faculty member. It also found that Northwood's residential environment combined with its mountain location and integration of outdoor, stress-relieving activities rendered "it uniquely suited to address the Student's migraines." *Id.* at 129. The IHO additionally emphasized Northwood's development of an accommodation plan that was tailored to W.E.'s needs, the informal counseling sessions the school provided W.E. on a regular basis, and Northwood's ability to deliver 24-hour-a-day nursing services. It ruled accordingly that the Parents were entitled to tuition reimbursement.

ii. *SRO Appeal and Decision*

On March 18, 2014, the SRO issued a decision in which it agreed with the IHO's findings regarding the internal inconsistencies in W.E.'s IEP and thus affirmed the IHO's ruling that W.E. was denied a FAPE. The SRO, however, reversed the portion of the IHO's decision ruling that Northwood was an appropriate placement for W.E. The SRO reviewed the relevant testimony and

evidence in detail and found that it was "without question that during the 2012-13 school year, the student exhibited progress in the sense that except when experiencing a migraine, he attended classes consistently, achieved grades in the 'A-' to 'C+' range, and demonstrated increased maturity and ability to socially interact with peers." *Id.* at 109. Despite the accommodations and amenities available at Northwood, the SRO concluded that:

> the hearing record does not contain evidence that [Northwood] provided the student with specially designed instruction to meet his ongoing need to develop insight and understanding into what triggered his stress and anxiety, and positive coping skills to address stress and decrease anxiety; difficulties that the hearing record showed not only contributed to the student's tendency to develop migraine headaches, but also to exhibit organizational deficits and avoidance behaviors.

*Id.* The SRO also noted that while W.E. appeared to have benefitted from his informal counseling with Mr. Mellor, the hearing record did not contain any counseling notes, progress reports, or other records indicating that the counseling was addressing W.E.'s "need to develop insight and coping skills," and that while W.E. eventually participated in more systematic counseling with a private social worker later in the school year, there was similarly no evidence showing how this private counseling was tailored to W.E.'s needs. *Id.* And even though W.E. achieved satisfactory grades throughout his tenth-grade year, the SRO observed

that "he continued to exhibit organizational and motivational/behavioral difficulties at times in his class." *Id.* at 110. The SRO found that Northwood offered W.E. accommodations that were available to virtually all other students, but that the record lacked evidence showing how Northwood "provided specially designed instruction to address the student's organizational difficulties." *Id.* The SRO ruled accordingly that the Parents failed to carry their burden of demonstrating that Northwood was an appropriate placement.

## IV. District Court Proceedings

The Parents sought judicial review of each of the SRO's decisions. Their first federal court complaint, filed on April 30, 2014, challenged the SRO's decision in Case One and sought reimbursement of home instruction and counseling costs for W.E.'s eighth-grade school year and tuition reimbursement for their unilateral placement of W.E. at Northwood for the ninth-grade school year. The second complaint, filed on June 13, 2014, challenged the SRO's decision in Case Two and sought tuition reimbursement for W.E.'s placement at Northwood for the tenth-grade academic year. The two cases were consolidated in September 2015, and the parties filed cross-motions for summary judgment.

### A. Case One

With respect to W.E.'s eighth-grade year, the district court found "no reason to disturb the SRO's reasoned analysis," concluding that the District did not deny W.E. a FAPE. *W.A.*, 219 F. Supp. 3d at 458. While the district court acknowledged the Parents' emphasis on W.E.'s clinically significant somatization scores from seventh grade and incomplete grades from his eighth-grade second-quarter, among other signals that the Parents alleged should have put the District on notice of W.E.'s disability, the district court noted that "[t]he crux of the SRO's decision, however, was not so much that there was no basis to suspect that W.E. may be disabled, but that there was no reason to suspect that *special education* was needed to remedy that disability." *Id.* at 457. Given that the SRO thoroughly considered W.E.'s progress in the general education curriculum with the accommodations provided in his Section 504 plan, as well as his performance on standardized tests and psychological evaluations and feedback from his teachers, and given that the SRO weighed testimony from M.S. and from W.E.'s counselors, neurologist and a private psychologist, the court found the SRO's conclusions supported by the record. In this regard the district court found that "the SRO's decision stood on more solid conceptual footing than the IHO's." *Id.* at 459.

As for the issue of tuition reimbursement, the district court noted as an initial matter that the District did not challenge the SRO's conclusion in each case that W.E. was denied a FAPE for his ninth- and tenth-grade years and that it would therefore skip directly to the reimbursement analysis. The court deferred to the SRO's conclusion in Case One that Northwood was not an appropriate placement for W.E.'s ninth-grade year but held that the SRO's conclusion in Case Two was neither well-reasoned nor persuasive. While the records in both cases would appear relevant to the common question of whether Northwood was an appropriate placement, and while the same SRO presided over both administrative appeals, the district court noted that it would attempt to analyze the issue separately in the context of each of the two school years, "[g]iven the material differences between the SRO's two opinions in terms of quality and persuasiveness." *Id.* at 463.

The district court found the Parents' challenges to the IHO and SRO decisions unconvincing in Case One, noting that both the IHO and SRO took adequate stock of the available evidence and that any reputed flaws in the opinions were ultimately insufficient to strip them of the deference to which they were otherwise entitled. The district court also independently assessed the

Parents' arguments regarding Northwood's appropriateness as a placement for W.E.'s ninth-grade year and concluded that the substantial improvement in W.E.'s attendance record could not alone satisfy the Parents' burden. W.E.'s grades and positive response to the Northwood culture did not lead the district court to question the IHO's and SRO's reasoning. Nor did the district court think it was in a position to question the state officers' determination that W.E.'s counseling was not tailored to his needs. The district court did note that it found the SRO's reasoning regarding Northwood's smaller residential setting unpersuasive given the evidence that W.E. was in need of a smaller school environment, but that this factor was not sufficient to undermine the SRO's opinion. The court reached a similar conclusion regarding the SRO's finding that Northwood's accommodation plan was not responsive to W.E.'s needs, and noted that the fact that other Northwood students received the same accommodations did not speak to their efficacy or appropriateness for W.E. Despite the flaws that the district court identified in the SRO's opinion, the court agreed that the Parents did not satisfy their burden of showing that Northwood was an appropriate placement, especially in light of the SRO's analysis regarding Northwood's failure to offer

meaningful counseling or vehicles for addressing W.E.'s organizational and stress-related issues.

## B. Case Two

Although the same SRO presided over both appeals, the district court found its reasoning deficient in Case Two. It noted that "although the SRO provided a thorough recitation of the facts on the record, it dedicated barely two pages to actually analyzing whether Northwood was an appropriate placement." *Id.* at 470. The district court found that the SRO placed undue emphasis on W.E.'s need to cope with stress at the expense of W.E.'s other needs relating to his organizational skills and study habits and a supportive educational environment. While the court did not agree with all of the IHO's reasoning, it found the IHO's analysis more compelling and accordingly considered its opinion in weighing the appropriateness of Northwood as a placement for W.E.'s tenth-grade year.

The district court addressed each of the Parents' arguments, first finding that the SRO's conclusions regarding W.E.'s mixed academic progress were largely consistent with the record but that this factor should nonetheless slightly favor reimbursement. The district court observed no error in the SRO's conclusion that W.E.'s participation in outdoor activities was not specially

31

designed for his needs but found that the SRO failed to accord appropriate weight to the significant improvement in W.E.'s attendance, noting that this improvement "was attributable to Northwood's boarding feature." *Id.* at 472. As for Northwood's accommodations, the district court was particularly concerned by the SRO's failure to consider W.E.'s use of an iPad, which testimony before the IHO had indicated "was a 'godsend' for W.E." and helped with his organizational difficulties. *Id.* at 473. The court noted that the fact that the iPad was generally available to all Northwood students did not change its analysis, as "the Second Circuit has never indicated that a resource available to all students cannot be considered for purposes of determining appropriate placement if that resource addressed a specific need of the child." *Id.* Although the district court noted that the record contained little evidence of the effect of a second study hall provided to W.E., it found the SRO's failure to even mention the addition of a study hall concerning. As for counseling, the district court agreed with the SRO that the informal counseling provided by Mr. Mellor was not meaningfully or appropriately tailored to W.E.'s needs. And the court found that Northwood's 24-hour nursing support weighed only slightly in favor of reimbursement given the minimal record evidence showing specific benefits that W.E. received.

Finally, the district court held that Northwood's small class size—which satisfied W.E.'s IEP—favored reimbursement, finding again that the fact that such a feature is generally available does not undermine its appropriateness in addressing a particular student's needs.

In short, the district court noted that while there was "no question the SRO considered all of the evidence on the record," it found its discussion of Northwood's appropriateness truncated and inadequate, specifically in failing to consider Northwood's small class size, residential component, 24-hour nursing, and the impact of its accommodations on W.E.'s specific needs. *Id.* at 476. The court again noted that it reached a differing conclusion regarding the SRO's opinion in Case Two due to its more conclusory and unpersuasive nature, but also because the record for the tenth-grade year was "more robust and offers more insight into the benefits and accommodations Northwood offered to W.E. to meet his specific needs." *Id.* at 477. It also considered the equities *de novo* and concluded that they, too, favored reimbursement, finding that the Parents participated in the CSE process with an open mind and afforded the District an opportunity to construct an appropriate IEP while simultaneously pursuing necessary steps to secure W.E.'s prospective re-enrollment at Northwood. The

33

court noted, for instance, that the Parents made another visit to the Southern Westchester BOCES program in July 2012, which undermined the District's argument that W.E.'s enrollment at Northwood was inevitable.

### C. The District's Counterclaim

The district court also granted the District's motion to amend to add a counterclaim for costs awarded by the IHO in Case One. The parties cross-moved for summary judgment on the counterclaim and on July 18, 2017, the district court awarded summary judgment to the District and vacated the award of compensatory education for the eighth-grade school year based on its affirmance of the SRO's ruling that W.E. was not denied a FAPE during eighth grade. On September 13, 2017, the district court entered final judgment incorporating its opinions and orders dated November 23, 2016, and July 18, 2017. The District appealed and the Parents cross-appealed.

### DISCUSSION

### I.    Deference Owed to State Hearing and Review Officers

"We undergo a circumscribed *de novo* review of a district court's grant of summary judgment in the IDEA context because the responsibility for determining whether a challenged IEP will provide a child with a FAPE rests in

the first instance with administrative hearing and review officers." *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 138 (2d Cir. 2013) (internal quotation marks and brackets omitted). "Summary judgment in the IDEA context, therefore, is only a 'pragmatic procedural mechanism for reviewing administrative decisions.'" *Id.* (quoting *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (*per curiam*)). "Federal courts reviewing administrative decisions [under the IDEA] must give 'due weight' to the administrative proceedings, 'mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 381 (2d Cir. 2003) (quoting *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998)).

Courts reviewing the state agency's decision must base their decision on a preponderance of the evidence and may not substitute their own views on educational policy for those of the school authorities. *A.C.*, 553 F.3d at 171. Our review of the state's educational decisions is therefore limited, demanding a level of scrutiny that is more critical than clear-error but not nearly as complete as *de novo*. *See C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014).

Accordingly, what we refer to as "*de novo* review" in fact "only seeks to independently verify that the administrative record supports the district court's determination" regarding the sufficiency of the state's educational decisions. *Mr. P*, 885 F.3d at 748 (quoting *M.W.*, 725 F.3d at 138). We similarly afford special deference to the district court where its "decision was based solely on the administrative record." *A.C.*, 553 F.3d at 171.

If the SRO and IHO decisions conflict, "the IHO's decision 'may be afforded diminished weight.'" *Id.* (quoting *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 113 n.2 (2d Cir. 2007)). In other words, we would "defer to the final decision of the state authorities, that is, the SRO's decision." *M.W.*, 725 F.3d at 139 (internal quotation marks omitted). Yet such deference applies only to the SRO's "reasoned conclusions"—that is, "[r]eviewing courts must look to the factors that 'normally determine whether any particular judgment is persuasive'" and must ultimately "defer to the SRO's decision on matters requiring educational expertise unless [the court] concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." *R.E.*, 694 F.3d at 189 (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 244, 246 (2d Cir. 2012)). "But the district court's determination of the persuasiveness of an administrative

finding must also be colored by an acute awareness of institutional competence and role. . . . [T]he purpose of the IDEA is to provide funding to states so that *they* can provide a decent education for disabled students consistent with their traditional role in educating their residents." *M.H.*, 685 F.3d at 244.

## II. Issues for Judicial Review

### A. Case One

#### i. *W.E.'s Eighth-Grade Year*

The Parents challenge the district court's deference to the SRO's ruling that the District met its Child Find obligation during W.E.'s eighth-grade year. The Council of Parent Attorneys and Advocates, Inc. has also submitted a brief as *amicus curiae* in which it asserts that the District violated its Child Find obligation with respect to W.E. As noted previously, the IDEA and its implementing regulations require each State to develop policies and procedures for identifying and evaluating children with disabilities for special education services. *Mr. P*, 885 F.3d at 749; 34 C.F.R. § 300.111. This obligation extends not only to children with disabilities but also to those "who are suspected of being a child with a disability . . . and in need of special education, even though they are advancing from grade to grade." *Id.* § 300.111(c)(1). "However, 'Child Find does not

demand that schools conduct a formal evaluation of every struggling student.'"

*Mr. P*, 885 F.3d at 749 (quoting *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 249 (3d. Cir. 2012)).

"To hold a school district liable for failing to identify a student who should be evaluated for purposes of receiving special education, a claimant must show that school officials overlooked clear signs of disability and were negligent in failing to order testing, or that there was no rational justification for not deciding to evaluate." *Id.* at 750 (internal quotation marks omitted). "A school district must begin the evaluation process within a reasonable time after the district is on notice of a likely disability." *Id.* The SRO ruled that the District was not on notice that W.E. might have a disability warranting special education services prior to the Parents' referral of W.E. to the CSE in April 2011 and that it therefore did not violate its Child Find obligation. Its thorough opinion found that the administrative record supported the District's view that W.E. appeared to be "making progress within the general curriculum despite his absences." Sp. Supp. App. 71. It also noted that the District worked with the Parents to enable W.E. to catch up on schoolwork despite his extensive absences, citing, *inter alia*, laudatory contemporaneous remarks made by M.S. about the District and its

teachers, as well as M.S.'s decision to cancel a January 2011 Section 504 review meeting due to her communicating that "I think we have everything in place." *Id.* at 70.

In arguing that the District was on notice of W.E.'s potential disability much earlier, the Parents point out that by mid-January 2011, W.E. had already missed more days of school than permitted by District policy for the entire year, received incompletes in three subjects, dropped his Enriched English class, and that his grade in Algebra had fallen from a 93 to a 78. With the exception of W.E. having dropped Enriched English, the SRO's opinion indicates awareness of these facts, however, and instead reaches a contrary conclusion that it was not until the third quarter of W.E.'s eighth grade year that his "absences began to compromise his ability to achieve academically." *Id.* at 71. And as the district court noted, the SRO also considered W.E.'s standardized test scores and feedback from teachers, thus construing the meaning of "academic success" more broadly than the IHO had done—an analysis it was entitled to undertake. *See W.A.*, 219 F. Supp. 3d at 459.

Because we must defer to the SRO's "reasoned conclusions" on "matters requiring educational expertise," *R.E.*, 694 F.3d at 189, we hold that the district

court properly deferred to the SRO on the question of whether the District violated its Child Find obligation for W.E.'s eighth-grade school year. The question of whether the District should have taken more aggressive steps in the face of competing signals arising from various interactions with the Parents and with the District's personnel regarding W.E.'s progress in the general education curriculum is an issue that calls for expertise; it is therefore an issue on which we must defer to the educational experts. In addition, the district court correctly noted that "[t]he crux of the SRO's decision, however, was not so much that there was no basis to suspect that W.E. may be disabled, but that there was no reason to suspect that *special education* was needed to remedy that disability." *W.A.*, 219 F. Supp. 3d at 457. This is a conclusion that a reviewing court should not disturb absent an objective flaw in the SRO's reasoning. For similar reasons, we decline to consider the argument presented by amicus that school avoidance is a "manifestation of disability" that demanded intervention when the State was in the best position to assess whether and to what extent W.E.'s absences warranted special education services.

In light of our holding that W.E. was not denied a FAPE for his eighth-grade year, we decline, as the district court did, to reach the Parents' request for

40

compensatory education for that year. For the same reason, we affirm the district court's July 18, 2017 decision vacating the SRO's award of compensatory counseling services for eighth grade. While the Parents assert that the award was issued in connection with the denial of a FAPE for ninth grade because it was intended to reimburse the Parents for therapy sessions that Dr. Williams relied upon to develop W.E.'s ninth-grade IEP, the IHO opinion in Case One makes clear that the award of counseling reimbursement was issued in connection with the denial of a FAPE for eighth grade. We are thus not inclined to override the State's explicit attribution. Nor do we find compelling the Parents' argument that the District's alleged failure to appeal the IHO's limited award of reimbursement for Dr. Williams's psychiatric services rendered the district court without jurisdiction to grant the District's motion to amend to seek recovery of these costs. As the district court found, it "defies common sense to suggest" that the District did not administratively appeal the reimbursement award when there is no question that the District cross-appealed the portion of the IHO's decision that found that the District had violated its Child Find obligation and denied W.E. a FAPE for his eighth-grade year. *See W.A.*, 2017 WL 3066888, at *9.

41

In sum, we affirm in all respects the district court's judgment and accompanying opinion and orders regarding the eighth-grade school year.

ii.   *Whether Northwood Was an Appropriate Placement for W.E.'s Ninth-Grade Year*

Courts apply the three-step "*Burlington/Carter*" test to determine whether a parent is entitled to retroactive tuition reimbursement. *C.F.*, 746 F.3d at 76. We first assess whether the District provided a FAPE; if it did not, we move on to the second and third steps, under which the parents bear the burden of showing that their unilateral private school placement was appropriate for the child's needs and that the equities work in their favor. *Id.*; *see also A.C.*, 553 F.3d at 171–72. The District does not contest that it failed to provide W.E. a FAPE for W.E.'s ninth- or tenth-grade school years, and we therefore move directly to the second step of the analysis.

At step two, the private school placement "must be reasonably calculated to enable the child to receive educational benefits." *M.H.*, 685 F.3d at 252 (internal quotation marks omitted). "Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's

individual needs." *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006). Even where the private placement yields evidence of the child's success, however:

> courts should not disturb a state's denial of IDEA reimbursement where the chief benefits of the chosen school are the kind of advantages that might be preferred by parents of any child, disabled or not. Rather, the unilateral private placement is only appropriate if it provides education instruction [*specially*] designed to meet the *unique* needs of a handicapped child.

*M.H.*, 685 F.3d at 252 (quoting *Gagliardo*, 489 F.3d at 115 (internal quotation marks and alterations omitted).

Our conclusion that the SRO's opinion in Case One was sufficiently reasoned and adequately supported by the administrative record supports the deference that the district court conferred on the SRO on issues demanding its educational expertise as concerns W.E.'s ninth-grade year. We therefore affirm the district court's deference to the SRO's ruling that Northwood School was not an appropriate placement entitling the Parents to tuition reimbursement for ninth grade. While the Parents argue that the State failed to consider fully Northwood's responsiveness to W.E.'s unique needs and the significant improvements he experienced while enrolled at the private school—including his momentous increase in attendance—the SRO's opinion reflects that it considered

43

the relevant evidence of W.E.'s progress. For instance, the SRO noted that "the hearing record supports a finding that the student's social/emotional and academic functioning improved since the end of the 2010-11 school year, . . . and that the student achieved some progress academically during the 2011-12 school year" while simultaneously citing reports from W.E.'s teachers describing his inconsistent level of academic effort, timeliness, and preparation. Sp. Supp. App. 84. The SRO also properly cited this Court's decision in *Gagliardo*, 489 F.3d at 115, for the proposition that a student's progress in a unilateral placement, while relevant to the court's inquiry, cannot alone demonstrate the appropriateness of that placement.

Indeed, the crux of the SRO's decision was not that W.E. failed to progress at Northwood, but, rather, that:

> the hearing record lacks evidence demonstrating that [Northwood] provided instruction that was designed to address the student's tendencies to develop physical symptoms and exhibit school avoidance when under stress, or his need to develop coping skills to manage stress related to academics and social interactions, and to improve his organizational/study skills related to academics, and, that the instruction that the student received during the 2011-12 school year was, in fact, available to all students enrolled at [Northwood].

*Id.* at 84–85. The SRO thus concluded that placing W.E. in Northwood's "residential setting—which merely eliminated his exposure to the public school

environment and to activities that he perceived as stressful—is not sufficient in this case to meet the parents' burden to establish that [Northwood's] program provided the student with educational instruction specially designed to meet his unique needs." *Id.* at 85. Instead, the SRO found that Northwood's educational and environmental benefits were those "that might be preferred by parents of any child, disabled or not," and therefore did not satisfy the IDEA's definition of special education. *Id.* (quoting *Gagliardo*, 489 F.3d at 115).

Because the question of whether a private school placement provided special education services is precisely a question on which we defer to educational experts, *see, e.g.*, *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 451–52 (2d Cir. 2015), and because the SRO's considered opinion reflects that it viewed W.E.'s migraines as stemming from underlying emotional and psychological issues that Northwood was not equipped to address, we hold that the district court properly deferred to the SRO notwithstanding its disagreement with certain aspects of the SRO's opinion. We therefore do not reach the issue of whether the equities favored reimbursement.

### B. Case Two

> i. *Whether Northwood Was an Appropriate Placement for W.E.'s Tenth-Grade Year*

As already noted, while the same SRO presided over the administrative appeals in both Case One and Case Two, the district court found its opinion in the latter case conclusory and unpersuasive and instead took the IHO's opinion, which it found more convincing, into account. "Where the IHO and SRO disagree, reviewing courts are not entitled to adopt the conclusions of either state reviewer according to their own policy preferences or views of the evidence; courts must defer to the reasoned conclusions of the SRO as the final state administrative determination." *M.H.*, 685 F.3d at 246. Because we are persuaded that the district court improperly substituted its judgment on matters of educational policy for that of the SRO, and in light of the district court's own acknowledgment that "[t]here is no question the SRO considered all of the evidence on the record," *W.A.*, 219 F. Supp. 3d at 476, we hold that the district court improperly failed to accord deference to the SRO's ruling that Northwood School was not an appropriate placement for W.E.'s tenth-grade year.

First, we perceive no qualitative difference in the SRO's opinions in Case One and Two that would entitle the former but not the latter to deference. The district court's characterization of the SRO's opinion in Case Two as "dedicat[ing] barely two pages to actually analyzing whether Northwood was an appropriate

46

placement," *Id*. at 470, is unfounded. It ignores the SRO's comprehensive review of the relevant record evidence documenting, *inter alia*, W.E.'s progress, reports from W.E.'s Northwood teachers and clinicians, and the various accommodations and amenities W.E. received at Northwood—all of which informed the SRO's ultimate conclusion as to whether Northwood provided W.E. special education within the meaning of the IDEA.

The district court additionally criticized the SRO's opinion as omitting certain considerations, but the record reveals that, by and large, the SRO did consider the same factors that the district court found dispositive and instead differed as to their import. For example, the district court took issue with the thoroughness of the SRO's discussion of W.E.'s tenth-grade accommodations, specifically focusing on the way in which an iPad Northwood provided benefitted W.E.'s academic progress. According to the district court, "the SRO made no reference to the device in its analysis of whether Northwood was an appropriate placement." *Id*. at 473. In fact, however, the SRO opinion accounts for testimony concerning the iPad in several places, specifically noting its use "as an instructional or learning aid." Supp. App. 104**.** While the district court emphasized testimony from W.E.'s western civilization teacher indicating "that

47

the iPad was a 'godsend' for W.E.", *W.A.*, 219 F. Supp. 3d at 473, the SRO highlighted, *inter alia*, other testimony from W.E.'s English teacher and counselor, indicating that he thought the iPad was a good match but that he could not provide quantifiable evidence of the way W.E.'s accommodation plan had benefitted him. The SRO also noted comments from W.E.'s western civilization teacher stating that W.E. used the iPad for notetaking and homework and that it lessened his need for organizational help.

The district court also faulted the SRO for failing to discuss the vast improvement in W.E.'s attendance while at Northwood. But the SRO observed that the decreased frequency of W.E.'s headaches yielded "significantly improved school attendance," Supp. App. 100, later stating that "it is without question that during the 2012-13 school year, the student exhibited progress in the sense that except when experiencing a migraine, he attended classes consistently, achieved grades in the 'A-' to 'C+' range, and demonstrated increased maturity and ability to socially interact with peers," *Id.* at 109. What is more, while W.E.'s improved attendance at Northwood undoubtedly serves as compelling indicia of progress, it was from eighth to ninth grade that W.E. went from missing over 100 days of school to only nine the following year. Yet the district court did not find this

enormous improvement vital enough to overturn the SRO's assessment in Case One. Between ninth and tenth grade, by contrast, W.E.'s absences essentially remained the same, and so the district court's emphasis on W.E.'s attendance in the latter school year cannot bear the weight assigned to it.

Outside of W.E.'s attendance and his use of an iPad, the district court lamented the SRO's failure to discuss a second study hall Northwood offered during the tenth-grade school year, yet simultaneously noted that the record contained little evidence of the study hall's benefit. It also critiqued the SRO's lack of attention to Northwood's small class size and boarding-school feature, which, according to the district court, "provided W.E. benefits specific to his unique needs." *W.A.*, 219 F. Supp. 3d at 476. The SRO's opinion, however, does reflect that it considered Northwood's small student-to-teacher ratio and the way in which it enabled "discussion-based learning." Supp. App. 107. In so doing it cited *Frank G.*, 459 F.3d at 365, where this Court recognized that small class size falls within the IDEA's definition of special education but declined to decide whether small class size alone could render a private placement appropriate. This Court, moreover, recently recognized that small class size "is the kind of educational and environmental advantage that might be preferred by parents of

any child, disabled or not." *Doe*, 790 F.3d at 452 (internal quotation marks and alterations omitted); *see also Gagliardo*, 489 F.3d at 115. The district court otherwise agreed with the SRO's characterization of W.E.'s academic performance, as well as the SRO's conclusions that Northwood did not provide meaningful counseling and that its outdoor programming did not render it an appropriate placement.[6]

In short, the district court's decision not to defer to the SRO's opinion on the basis of the SRO's putatively perfunctory analysis is not supported by the record. *Cf. C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 838 (2d Cir. 2014) (declining to afford deference to SRO where its opinion "was not sufficiently reasoned or carefully considered because the SRO did not consider or comment on *any* of the specific services provided to [the student at the private school] or the progress that the record shows he made at the school").

Second, rather than "credit[] the conclusions that were most consistent with its own subjective analysis," the reviewing court should only reject the SRO's

---

[6] The district court was essentially ambivalent about the impact of nursing services, though its observation that "[i]t strains credulity to suggest that an around-the-clock nurse staff, one of whom resided on the same floor as W.E., . . . was not an educational feature that worked to W.E.'s specific benefit," *W.A.*, 219 F. Supp.3d at 475, would appear to apply with equal force to W.E.'s ninth grade year, where the district court reached a contrary conclusion.

conclusions if it finds that they are not supported by a preponderance of the evidence. *M.H.*, 685 F.3d at 248. Here, the district court did not address whether the SRO's conclusions were supported by a preponderance and instead appeared to conduct a true *de novo* analysis of whether each factor favored reimbursement, ultimately holding that the SRO "failed to give adequate weight to many of Northwood's most beneficial features and erroneously discounted the value of some of those features merely because they were generally available to all students." *W.A.*, 219 F. Supp. 3d at 470. We agree with the district court that a resource that benefits an entire student population can constitute special education in certain circumstances. Under our precedents, however, a reviewing court is not entitled to overrule the State on a question of educational policy—such as whether a generally available resource is specially tailored to a particular disabled student's needs—based merely on its own disagreement with the State's evaluation of that resource. *See M.H.*, 685 F.3d at 241; *see also Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 196 (2d Cir. 2005) (For a reviewing court to render its own determination on a matter of educational policy, it must point to "objective evidence in the record suggesting that the SRO has reached an erroneous conclusion."). In ruling that Northwood School was an appropriate placement

for W.E.'s tenth-grade year, the district court appeared to do just that—conducting its own totality of the circumstances analysis in which it substituted its subjective assessment for that of the State.

As in Case One, the SRO's ruling was grounded in its conclusion that the record lacked evidence showing that Northwood provided W.E. with "specially designed instruction to meet his ongoing need to develop insight and understanding into what triggered his stress and anxiety, and positive coping skills to address stress and decrease anxiety; difficulties that the hearing record showed not only contributed to the student's tendency to develop migraine headaches, but also to exhibit organizational deficits and avoidance behaviors." Supp. App. 109. While the Parents highlight the many benefits Northwood provided W.E., endorsements of the private school by W.E.'s medical professionals, and various emblems of W.E.'s academic, social, and emotional growth during his tenure, many of the features that appear to have abated W.E.'s stress and migraines are those that any parent would desire in an educational setting—namely, smaller classes, closer attention by faculty and staff, bucolic surroundings in a residential environment, and use of an iPad for organization and note-taking. Thus, even though the record may support the view that

52

Northwood was an excellent placement for W.E., it also supports the SRO's conclusion that Northwood was not methodologically or therapeutically structured in the way required for reimbursement under the IDEA. *See Gagliardo*, 489 F.3d at 115. This educational policy judgment likewise reinforces the deference that we believe we must give the SRO's opinion.

## CONCLUSION

We affirm the district court's November 23, 2016 opinion and order to the extent it deferred to the SRO's conclusions regarding the District's Child Find obligation and Northwood's failure to provide W.E. special education during the ninth-grade academic year. Because the district court failed to confer appropriate deference to the SRO's analysis regarding Northwood's lack of specially designed instruction tailored to W.E.'s unique needs during the tenth-grade school year, we reverse the district court's November 23, 2016 opinion and order to the extent it held that Northwood School was an appropriate placement for that school year and accordingly vacate its award of tuition reimbursement. We also affirm the district court's July 18, 2017 opinion and order granting the District's motion for summary judgment and denying the Parents' cross-motion for summary

judgment and vacating the award of compensatory education for the eighth-grade school year.

Because the District is the prevailing party both on appeal and on the cross-appeal, costs under Fed. R. App. P. 39(a) shall be taxed against Appellees-Cross-Appellants.