25-808-cv
*Khanimova v. Samuels*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of February, two thousand twenty-six.

PRESENT:
> MICHAEL H. PARK,
> SARAH A. L. MERRIAM,
> > *Circuit Judges*,
> KIYO A. MATSUMOTO,
> > *District Judge*.[*]

---

SVETLANA KHANIMOVA, AS PARENT AND NATURAL GUARDIAN OF R.N. AND INDIVIDUALLY,
> *Plaintiff-Appellant*,

v.                                                            25-808-cv

KAMAR H. SAMUELS, IN HIS OFFICIAL CAPACITY AS CHANCELLOR OF THE NEW YORK CITY DEPARTMENT OF EDUCATION; NEW YORK CITY DEPARTMENT OF EDUCATION,
> *Defendants-Appellees*.[†]

---

[*] Judge Kiyo A. Matsumoto, of the United States District Court for the Eastern District of New York, sitting by designation.

[†] Under Federal Rule of Appellate Procedure 43(c)(2), Chancellor Kamar H. Samuels is automatically substituted as a party to this litigation for David C. Banks. The Clerk of Court is respectfully directed to amend the caption accordingly.

FOR PLAINTIFF-APPELLANT:                RORY J. BELLANTONI (Nicole Lancia, *on the brief*), Liberty & Freedom Legal Group, Ltd., New York, NY

FOR DEFENDANTS-APPELLEES:                IAN M. SINCLAIR (Richard Dearing, Claude S. Platton, *on the brief*), *for* Muriel Goode-Trufant, Corporation Counsel of the City of New York, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Garnett, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Svetlana Khanimova is the mother of R.N., a severely disabled child. Defendant-Appellee New York City Department of Education ("DOE") created an Individualized Education Program ("IEP") for R.N. that recommended placement at a specialized public school with various services for the 2022-2023 school year. Dissatisfied with these recommendations, Khanimova re-enrolled R.N. at the International Institute for the Brain ("iBrain"), a private school R.N. had attended since October 2021, without DOE's consent. Khanimova then sought tuition reimbursement for the 2022-2023 school year from DOE under the Individuals with Disabilities Education Act ("IDEA"). An Impartial Hearing Officer ("IHO") denied her request, determining that she did not demonstrate that iBrain was an appropriate unilateral placement for the 2022-2023 school year. A State Review Officer ("SRO") dismissed her appeal of that denial. Seeking to overturn the SRO's decision, Khanimova commenced this action against DOE and its Chancellor. The district court granted summary judgment to Defendants, concluding that the SRO's decision was entitled to deference and that Khanimova did not show that iBrain was an appropriate placement for R.N. for the 2022-2023 school year. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

2

"We review *de novo* a district court's decision to grant summary judgment on an IDEA claim." *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 837 (2014). "In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but the procedure is in substance an appeal from an administrative determination, not a summary judgment motion." *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (quotation marks omitted). "The district court therefore engages in an independent review of the administrative record and makes a determination based on a preponderance of the evidence." *Id.* (cleaned up). "In conducting such an independent review, courts must give due weight to the state administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id.* (cleaned up). "Accordingly, what we refer to as *de novo* review in fact only seeks to independently verify that the administrative record supports the district court's determination regarding the sufficiency of the state's educational decisions." *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 927 F.3d 126, 143 (2d Cir. 2019) (quotation marks omitted). "We similarly afford special deference to the district court where," as here, "its decision was based solely on the administrative record." *Id.* (quotation marks omitted).[1]

Parents who unilaterally enroll their child in a private school and "seek retroactive reimbursement" under the IDEA do so "at their own financial risk." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 111 (2d Cir. 2007). They "bear the burden of showing that the private placement they selected was appropriate for the child and that the equities weigh in their favor." *C.L.*, 744 F.3d at 836. "The parents' placement of the child must be reasonably calculated to enable the child to receive educational benefits, such that the placement is likely to produce

---

[1] The administrative record is filed at *Khanimova v. Banks*, Case No. 1:23-cv-9531 (S.D.N.Y.), ECF Nos. 15-1 to 15-2, 23-1. *See* App'x at 79 n.2.

progress, not regression." *Id.* at 836 (cleaned up). Parents must "demonstrate that the placement provides educational instruction specially designed to meet the unique needs of [the] handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 365 (2d Cir. 2006) (quotation marks omitted). In determining whether parents have met their burden, "we consider the totality of the evidence." *T.K. v. N.Y.C. Dep't of Educ.*, 810 F.3d 869, 877 (2d Cir. 2016).

The district court deferred to the SRO's ruling that Khanimova was not entitled to reimbursement because she failed to demonstrate that iBrain was an appropriate placement for R.N. for the 2022-2023 school year. "Our independent review of the administrative record reveals that the SRO's conclusion was sufficiently supported by the record to merit deference." *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 387 (2d Cir. 2014).

iBrain developed an IEP for R.N. for the 2022-2023 school year that recommended a 6:1:1 classroom (six students, one teacher, and one additional staff member); a 1:1 paraprofessional throughout the school day; five 60-minute sessions per week each of occupational therapy services, speech therapy services, and physical therapy; three 60-minute sessions per week of vision education services; two 60-minute sessions per week of hearing education services; one 60-minute session per week of orientation and mobility services; and one 60-minute session per week of assistive technology services. The IEP stressed the importance of providing all of these services and observed that R.N. "requires the consistency of daily physical therapy sessions . . . in order to make gains in physical development" and that "[s]he requires 60-minute [occupational therapy] sessions" five times per week. ECF No. 23-1, at 119-20. "A decrease in [the occupational therapy] service mandate," the IEP explained, "would lead to a decline in [R.N.'s] progress, and

4

therefore participation within the school environment, as she requires this administration of occupational therapy to address her physical, psychosocial, and cognitive needs." *Id.* at 119, 154.

Although iBrain placed R.N. in a 6:1:1 class and provided her with a 1:1 paraprofessional, it failed to provide the services at the levels recommended in its IEP. In her April 2023 testimony before the IHO, Tiffany Semm, iBrain's Director of Special Education, stated that R.N. received services "at least a few times a week for each discipline for the entire year," "most typically two to three times per week at least," but "not all five [sessions] per week." *Id.* at 448, 450. When asked about occupational therapy specifically, Semm testified that R.N. was getting those "services weekly, but not at the exact mandates at this time." *Id.* at 444. Semm attributed these service failures to "staffing shortages" "in each department." *Id.* at 444, 451.

To be sure, the mere "failure to include multiple services that were properly recommended in an IEP" does not "necessarily render[] a private placement inappropriate." *T.K.*, 810 F.3d at 878. But the gap between the services recommended in iBrain's IEP and the services iBrain provided to R.N. supports the SRO's conclusion that Khanimova has not met her burden of showing that iBrain rendered the "services" "necessary to permit" R.N. "to benefit from" its "educational instruction." *Frank G.*, 459 F.3d at 365 (quotation marks omitted). As the SRO explained, the "shortage of implemented sessions is of heightened concern since the iBrain plan highlighted the necessity of the consistency of daily, five days a week, therapy sessions for the student to make gains and progress." App'x at 59. iBrain's failure to adhere to the IEP's recommendations indicates that R.N. did not consistently get the services she needed.[2]

---

[2] Semm testified that iBrain was "offering make-up sessions over the school breaks" and that iBrain was "over-hiring" to make up all the missed sessions. ECF No. 23-1, at 447, 450. But Semm gave this testimony on April 20, 2023, about two months before the end of the school year, and there is no evidence that iBrain achieved full staffing for all its services teams before the school year ended. Nor is there evidence as to whether R.N. made up all her missed sessions, even though Semm testified that iBrain maintained such records. In any event, R.N. did not receive the full weekly services that the IEP recommended.

Evidence of the student's progress during the school year for which parents seek reimbursement may help demonstrate the propriety of the private-school placement, notwithstanding the school's failure to provide all the recommended services. *See T.K.*, 810 F.3d at 878. Here, the SRO properly concluded that Khanimova did not present sufficient evidence of R.N.'s progress at iBrain to meet her burden of proving that iBrain was an appropriate placement for the 2022-2023 school year.

Khanimova and Semm submitted affidavits regarding R.N.'s progress at iBrain, but the affidavits are not probative of R.N.'s progress during the 2022-2023 school year. They are not signed, dated, or notarized, and they have a typewritten date of August 2022 above the blank notary signature line. It is thus unclear whether the affidavits refer to R.N.'s progress during the 2021-2022 school year or the 2022-2023 school year, which began on July 6, 2022.

Khanimova's and Semm's April 2023 testimony before the IHO does not constitute sufficient evidence of R.N.'s progress. Khanimova testified that R.N. "knows how to stand up all on her own," "became more verbal" and "more exploring," has "better tracking," and has better control over how much water she swallows. ECF No. 23-1, at 380. Semm testified that, based on her "conversations with [R.N.'s] providers" and her "own observations of [R.N.] since she started with us, she's made a lot of progress." *Id.* at 462. That progress included greater "ability and willingness to participate in a range of activities" such as "listen[ing] to a story," less crying, improved "understanding of cause and effect activities," and better "ability to use communication devices" and "follow[] directions." *Id.* at 462-63. But neither this testimony nor any other evidence in the record "constitute[s] the 'objective evidence' of progress" during the 2022-2023 school year "that is preferable under the law of this Circuit." *Hardison*, 773 F.3d at 387. For instance, the record does not include R.N.'s quarterly progress reports, even though iBrain issued

them to R.N.'s parents and Semm reviewed them before testifying. *See R.H. v. Bd. of Educ. Saugerties Cent. Sch. Dist.*, 776 F. App'x 719, 721 (2d Cir. 2019) ("Although there was testimony that [the student] made some progress socially and emotionally, the record contained no evidence of test scores, grades, written behavioral plans, or other progress reports to support [the parent's] claim that [the student] made progress at [the private school].").[3] Nor does the record contain R.N.'s weekly provider notes, even though Khanimova testified that she received them.

Although Semm had worked in the special education field for 16 years and had observed R.N. throughout the school year, her testimony as to R.N.'s progress had limited value. Semm was not a classroom teacher or service provider, did not "oversee related services," and did not "remember" how R.N. had progressed relative "to each goal" set forth in iBrain's IEP. ECF No. 23-1, at 446, 461; *see Hardison*, 773 F.3d at 387 (discounting testimony from witness who "did not know any details of how [the student] was progressing academically or how her psychological progress tied into her educational progress"). That information could have been supplied by R.N.'s teacher and service providers, but Khanimova did not call them as witnesses. *See id.* ("[I]nformation" about "how [the student] was progressing academically" "was monitored by others at [the school] whom the [parents] chose not to call as witnesses before the IHO."). As the SRO explained, "under the circumstances presented here, where the unilateral placement has deviated significantly from the specialized instruction it initially presented as the necessary and appropriate level of services for the student, a lack of demonstrable progress by the student under the program as actually delivered only further compounds the parent's inability to prove that iBrain was an appropriate unilateral placement for the 2022-23 school year." App'x at 61. The SRO's

---

[3] When Khanimova sought iBrain tuition reimbursement for the 2021-2022 school year, she submitted copies of R.N.'s progress reports and attendance record to the IHO. She did not do the same when she requested reimbursement for the following school year.

opinion "was sufficiently reasoned and adequately supported by the administrative record," and we thus "affirm the district court's deference to the SRO's ruling that" iBrain "was not an appropriate placement entitling" Khanimova "to tuition reimbursement for" the 2022-2023 school year. *W.A.*, 927 F.3d at 146.

Khanimova's arguments to the contrary are unavailing. First, she contends the propriety of a private placement must be evaluated based on the information available when the parent makes the enrollment decision, not "after-the-fact evidence that a student made no progress, or even regressed." Appellant's Br. at 24-25. But as noted above, we "consider the totality of the evidence" in "determining whether a placement reasonably serves the educational needs of a child with a disability and is likely to produce progress." *T.K.*, 810 F.3d at 877 (quotation marks omitted). State administrative officers may thus consider evidence, or the lack thereof, regarding the student's progress and the educational instruction and services she receives at the private school during the school year for which the parents seek reimbursement. *See, e.g.*, *Hardison*, 773 F.3d at 388 (deferring to "SRO's determination that the hearing record lacks sufficient information regarding how [the private school] provided educational instruction specially designed to meet the unique needs of the student" (quotation marks omitted)); *M.S. ex rel. S.S. v. Bd. of Educ. of the City Sch. Dist. of the City of Yonkers*, 231 F.3d 96, 104 (2d Cir. 2000), *abrogated in part on other grounds*, *Schaffer v. Weast*, 546 U.S. 49 (2005) (upholding SRO's reimbursement denial that was based, in part, "on evidence that [the student's] reading level had not improved and his spelling level had declined during [the] school year" for which the parent requested reimbursement). Here, the SRO properly considered the totality of the evidence, including post-enrollment evidence about R.N.'s progress and services received.[4]

_____

[4] Khanimova argues that iBrain was an appropriate placement based on the information available at the time of enrollment because "[o]nly a few months before making her decision, [she] received a favorable ruling from an

Second, Khanimova claims the propriety of the iBrain placement must be assessed in light of DOE's conceded failure to offer R.N. a free appropriate public education ("FAPE") for the 2022-2023 school year. *See Cruz v. Banks*, 134 F.4th 687, 691 (2d Cir. 2025). But we analyze DOE's obligation to provide a FAPE independently of a parent's burden to demonstrate that a private placement is appropriate. DOE's failure to offer a FAPE, whether conceded or not, does not affect the analysis of whether the parent has met her burden. *See W.A.*, 927 F.3d at 146-47, 150 (parents not entitled to reimbursement because they failed to demonstrate private school was appropriate, even though school district did "not contest that it failed to provide [the student] a FAPE"); *D. D-S. v. Southold Union Free Sch. Dist.*, 506 F. App'x 80, 82 (2d Cir. 2012) (same).

Third, Khanimova claims the SRO engaged in "improper speculation when finding that [iBrain] would not provide the mandated services." Appellant's Br. at 28. But the SRO's analysis was not speculative. Semm testified in April 2023 that make-up sessions would occur "over the school breaks," iBrain was "over-hiring" to make up all the missed sessions, and "a couple of people . . . would be starting in May" to "complete our occupational therapy team." ECF No. 23-1, at 447, 450. As the SRO observed, however, Semm did not indicate that "shortages in other related services areas had been remedied." App'x at 58. After describing this testimony, the SRO noted that "it appears unlikely that there was enough time to reasonably make up such a large amount of missed services before the end of the 2022-23 school year" on June 23, 2023. *Id.* at 59. This observation was reasonable given the few weeks remaining in the school year and the uncertainty over whether iBrain would achieve full staffing in all its related-

IHO declaring that [iBrain] was a suitable placement for R.N. for the 2021-2022" school year. Appellant's Br. at 27. But the IHO issued his decision as to the 2021-2022 school year on July 16, 2022, more than one month after Khanimova and iBrain signed the 2022-2023 school year enrollment contract and ten days after the 2022-2023 school year started. Khanimova thus could not have known about the IHO's decision when she re-enrolled R.N. at iBrain, so the decision would be irrelevant even under her proposed framework. Regardless, evidence that iBrain was appropriate for the prior school year does not indicate it was appropriate for the 2022-2023 school year.

services departments before the school year ended. *Cf. M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 244 (2d Cir. 2015) ("While it is speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's mandates, it is not speculative to find that an IEP cannot be implemented at a proposed school that lacks the services required by the IEP." (citation omitted)). The SRO, moreover, did not focus solely on the likelihood of making up all the missed sessions. The SRO explained that the "shortage of implemented sessions is of heightened concern since the iBrain plan highlighted the necessity of the *consistency* of daily, five days a week, therapy sessions for the student to make gains and progress." App'x at 59 (emphasis added). Khanimova does not challenge this observation.

Fourth, Khanimova argues that complete denial of funding for the 2022-2023 school year is "harsh and punitive." Appellant's Br. at 48. But parents who unilaterally enroll their child in a private school and "seek retroactive reimbursement" do so "at their own financial risk." *Gagliardo*, 489 F.3d at 111. Where, as here, the parent does not meet her "obligation to demonstrate the appropriateness of" the unilateral placement, she "cannot recover under the IDEA for any portion of the" school year. *Hardison*, 773 F.3d at 388.

Finally, Khanimova claims the SRO erred by failing to find that the equities favor reimbursement. But we do not reach the equities where the parent fails to meet her burden to prove the propriety of the private-school placement. *See W.A.*, 927 F.3d at 147.

In sum, the district court properly deferred to the SRO's well-reasoned decision that Khanimova was not entitled to tuition reimbursement because she failed to demonstrate that iBrain was an appropriate placement for the 2022-2023 school year.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
